ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAY 1 4 2019

JAMES N. HATTEN, Clerk
By: [signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM C. BECK | Criminal Indictment<br><br>No. 1:19-CR-184 |

THE GRAND JURY CHARGES THAT:

### Counts 1 through 12
### (Wire Fraud)

1.     Beginning in or about February 2013 through in or about June 2018, in the Northern District of Georgia and elsewhere, the defendant,

JIM C. BECK,

did knowingly devise and intend to devise a scheme and artifice to defraud the Georgia Underwriting Association, and to obtain money and property from that entity by means of a materially false and fraudulent pretense, representation, and promise, as well as by an omission of material facts, well knowing and having reason to know that said pretense, representation, and promise was and would be false and fraudulent when made and caused to be made and that said omission was and would be material.

### Background

At all times relevant to this Indictment:

2.     BECK was the elected General Manager of Operations for Georgia Underwriting Association (GUA), an insurance association, located in Suwanee,

Georgia, in the Northern District of Georgia. As General Manager of Operations, BECK owed a fiduciary duty to GUA.

3. GUA was created under the Georgia Fair Access to Insurance Requirements (FAIR) law to provide high-risk property insurance to homeowners located throughout Georgia.

4. GUA was governed by a board of directors appointed by the Georgia Commissioner of Insurance, along with other members elected from a slate of candidates selected by the Georgia Commissioner of Insurance.

5. In addition to premiums collected from its customers, GUA was also funded by issuing assessments to the association members, which included every insurer authorized to write any form or type of property insurance in the State of Georgia.

6. BECK had a controlling financial interest in a business entity known as Creative Consultants located in Carrollton, Georgia.

7. BECK had a controlling financial interest in a business entity known as GA Christian Coalition located in Carrollton, Georgia.

8. Company A was a business entity formed at the suggestion and encouragement of BECK by M.B., a friend and associate of BECK. Company A was formed in 2013 and located in Temple, Georgia from 2013 to 2016 and incorporated in 2016 and located in Fort Myers, Florida from 2016 to 2018. Company A, which had no employees, existed only to produce fraudulent invoices, collect payment for fraudulent invoices, and redirect payments that it received to BECK through Creative Consultants.

9. Company B was a limited liability corporation formed at the suggestion and encouragement of BECK by S.J.M., a friend and associate of BECK. Company B was formed, incorporated, and located in Raleigh, North Carolina.

10. Company C was a limited liability corporation formed at the suggestion and encouragement of BECK by S.W.M., a friend and associate of BECK. Company C was formed and located in Raleigh, North Carolina and incorporated in Georgia.

11. Company D was a limited liability corporation formed at the suggestion and encouragement of BECK by S.G., a friend and associate of BECK. Company D was formed, incorporated, and located in Bowdon, Georgia. Company D, which had no employees, existed only to produce fraudulent invoices, collect payment for fraudulent invoices, and redirect payments received to BECK through GA Christian Coalition.

## The Scheme and Artifice to Defraud
### The Company A, Company B, and Company C Scheme

12. In early 2013, BECK told M.B. that he had developed a new, more economical way to do home inspections, which would save insurance companies a lot of money. BECK asked M.B. if he was interested in forming a business entity and handling "the books" for the new business in exchange for a 10% cut of the proceeds. After BECK assured M.B. that his proposal was "on the up and up," M.B. accepted BECK's offer and, in response, formed Company A. M.B. incorrectly believed that other unidentified individuals were performing the home inspections on behalf of Company A.

13. In 2015, BECK told S.J.M. that he had a business project for her. According to BECK, he wanted S.J.M to review property inspection reports for

GUA in order to determine whether the premiums GUA charged its customers should be adjusted based on the condition of the properties. BECK also requested that S.J.M. bill for Company A services on the invoices that she would prepare and submit to GUA. Based on information S.J.M. received from BECK, S.J.M. incorrectly believed that Company A was responsible for procuring the thousands of property inspection reports that she would be reviewing. BECK told S.J.M that she could keep 10% of the amount that she billed GUA each month for Company A's services. S.J.M. accepted BECK's offer and, in response, formed Company B. S.J.M. d/b/a Company B began to review property inspection reports and to bill GUA for her own services and the work she believed was performed or procured by Company A. In total, S.J.M. d/b/a Company B invoiced and collected approximately $908,000 from GUA and paid approximately $713,000 to M.B. d/b/a Company A. Then, at BECK's direction, Company A paid 90% of the funds it received from Company B to BECK through Creative Consultants.

14. In 2016, BECK contacted S.W.M. about a new business idea. BECK told S.W.M that he wanted him to assist GUA with offering mitigation advice to GUA customers who had potential water damage claims. BECK told S.W.M. that GUA would pay him a monthly retainer fee for his work. S.W.M. accepted BECK's offer and, in response, formed Company C. S.W.M. d/b/a Company C began to offer water damage mitigation counseling to GUA customers. BECK then instructed S.W.M. to include billing for Company A services on the Company C invoices that S.W.M. prepared for GUA. Based on information from BECK, S.W.M. incorrectly believed that Company A was responsible for reinsuring GUA for its water damage coverage. In total, S.W.M. d/b/a Company C

4

invoiced and collected approximately $370,000 from GUA and paid approximately $325,000 to M.B. d/b/a Company A.

15. Between February 22, 2013 and May 30, 2018, at BECK's direction, M.B. prepared monthly Company A invoices that falsely and fraudulently stated that Company A had produced "online home inspections" and "data scans" for GUA. On approximately 47 occasions, these invoices were sent directly to BECK in an electronic format to his personal email address. With BECK's approval, GUA paid the Company A invoices.

16. Between January 8, 2016 and March 15, 2018, at BECK's direction, M.B. prepared monthly Company A invoices that falsely and fraudulently stated that Company A had produced "inspection/data packets" for Company B. On approximately 29 occasions, these invoices were sent directly to BECK in an electronic format to his personal email address. BECK then sent the same invoices directly to S.J.M d/b/a Company B in an electronic format. In turn, at BECK's direction, S.J.M. prepared Company B invoices for GUA that included the same purported Company A services but at a marked-up rate. With BECK's approval, GUA paid the Company B invoices and, at BECK's direction, S.J.M paid the corresponding Company A invoices.

17. Between November 7, 2016 and June 15, 2018, at BECK's direction, M.B. prepared bi-monthly Company A invoices that falsely and fraudulently stated that Company A had produced "24/7 Mitigation Service Bronze Package" for Company C. On approximately 10 occasions, these invoices were sent directly to BECK in an electronic format to his personal email address. BECK then sent the same invoices directly to S.W.M d/b/a Company C in an electronic format. In turn, at BECK's direction, S.W.M. prepared Company C invoices for

GUA that included the same purported Company A services. These Company C invoices were sent by S.W.M. to BECK in an electronic format. With BECK's approval, GUA paid the Company C invoices and, at BECK's direction, S.W.M paid the corresponding Company A invoices.

18. Between February 15, 2013 and June 26, 2018, BECK sent invoices from Creative Consultants to Company A that falsely and fraudulently stated that Creative Consultants had produced "inspections," "data scans," and "Mitigation Services-Water Package" for Company A. In each instance, at BECK's direction, M.B. paid the Creative Consultants invoices with money Company A collected by invoicing GUA, Company B, and Company C. Over the course of this scheme and artifice, at BECK's direction, Company A paid BECK through Creative Consultants approximately 90% of all the payments Company A received.

### The Company D and GA Christian Coalition Scheme

19. In late 2012, BECK approached S.G. with a business opportunity. BECK told S.G. that he was interested in passing legitimate payments from GUA to GA Christian Coalition in an effort to build up and improve GA Christian Coalition. BECK told S.G. that the GUA board of directors gave BECK the authority to make such an arrangement. BECK further explained that the GUA payments should pass from GUA through another business entity that he suggested should be formed by S.G. and be called Company D. In exchange for handling the flow of payments from GUA to GA Christian Coalition, BECK told S.G. that he could keep at least 10% of every payment that GUA made to Company D. S.G. accepted BECK's offer and, in response, formed Company D.

20. Between August 6, 2013 and October 7, 2016, BECK delivered GUA checks to S.G. made payable to Company D. In no instance had S.G. invoiced

GUA for any work performed by Company D. However, BECK submitted fraudulent Company D invoices to GUA. With BECK's approval, GUA paid the Company D invoices.

21. In turn, on approximately 37 occasions, with each GUA payment received by Company D, BECK delivered to S.G. an invoice from GA Christian Coalition for approximately 88% of the corresponding GUA payment to Company D. The invoices from GA Christian Coalition falsely and fraudulently stated that Company D was being billed for "advertising sponsorship" or "sponsorship package." In every instance, at BECK's direction, S.G. paid GA Christian Coalition invoices with money Company D had collected from GUA.

22. All told, between February 2013 and August 2018, BECK, used the above-described fraud schemes to embezzle in excess of $2,000,000 from GUA.

23. BECK utilized the proceeds of the above-described fraud schemes for a variety of purposes. These purposes included paying thousands of dollars of personal expenses charged to a personal credit card and using thousands of dollars to fund personal investment and retirement accounts, personal savings accounts, and the "Jim Beck For Georgia, Inc." statewide election campaign account. BECK also utilized thousands of dollars of the illegal proceeds to purchase and improve personal rental property and to pay his personal state and federal income taxes.

24. Specifically, on or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant,

JIM C. BECK,

for the purpose of executing the scheme and artifice described above, such scheme and artifice knowingly having been devised and intended to be devised

7

to defraud, and for the purpose of obtaining money and property by means of a materially false and fraudulent pretense, representation, and promise, as well as by omission of a material fact, knowing and having reason to know that the pretense, representation, promise, and omission was and would be material, caused a wire communication to be transmitted in interstate commerce as a result of the following transactions:

| Count | Date | Wire Communication |
| --- | --- | --- |
| 1 | 12/01/2015 | Email from M.B. to BECK to which M.B. attached a Company A invoice to GUA which BECK knew to be false and fraudulent |
| 2 | 04/18/2016 | Text message from BECK to M.B. directing M.B. to prepare a Company A invoice to Company B which BECK knew to be false and fraudulent |
| 3 | 04/21/2016 | Email from BECK to M.B. to which BECK attached a Creative Consultants invoice to Company A which BECK knew to be false and fraudulent |
| 4 | 05/25/2016 | Email from BECK to S.G. in which BECK made plans with S.G. to meet and exchange proceeds of the scheme and artifice described above |
| 5 | 06/26/2016 | Text message from BECK to M.B. directing M.B. to prepare a Company A invoice to GUA which BECK knew to be false and fraudulent |
| 6 | 09/25/2016 | Email from BECK to S.G. in which BECK made plans with S.G. to meet and exchange proceeds of the scheme and artifice described above |
| 7 | 12/08/2016 | Text message from BECK to M.B. confirming payment of fraudulent proceeds from Company C to Company A |
| 8 | 07/02/2017 | Email from BECK to S.W.M. to which BECK attached a Company A invoice to Company C which BECK knew to be false and fraudulent |

| 9 | 08/21/2017 | Text message from BECK to M.B. confirming deposit of fraudulent proceeds from Company C into Company A account at United Community Bank |
| --- | --- | --- |
| 10 | 10/12/2017 | Text message from BECK to M.B. confirming deposit of fraudulent proceeds from GUA into Company A account at United Community Bank |
| 11 | 10/15/2017 | Email from BECK to S.J.M and S.W.M. to which BECK attached a Company A invoice to Company B and a Company A invoice to Company C both of which BECK knew to be false and fraudulent |
| 12 | 05/23/2018 | Text message from BECK to M.B. confirming deposit of false and fraudulent proceeds from Company C into Company A account at United Community Bank |

All in violation of Title 18, United States Code, Section 1343.

## Counts 13 through 24
### (Mail Fraud)

25.   The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 through 23 of this Indictment as if fully set forth here.

26.   On or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant,

JIM C. BECK,

for the purpose of executing and attempting to execute the scheme and artifice described above, and for the purpose of obtaining money and property by means of a materially false and fraudulent pretense, representation, and promise, as well as by an omission of material fact, knowing and having reason to know that the pretense, representation, promise, and omission was and would be material, did use the United States Postal Service by mailing and causing to be mailed and

did use a private and commercial carrier by depositing and causing to be deposited with the carrier the items listed below:

| Count | Date | From | To | Description |
|---|---|---|---|---|
| 13 | 01/30/2016 | BECK | M.B. | U.S.P.S. mail enclosing financial records |
| 14 | 03/02/2016 | BECK | M.B. | FedEx package enclosing financial records |
| 15 | 03/28/2016 | BECK | M.B. | FedEx package enclosing financial records |
| 16 | 05/31/2016 | BECK | M.B. | FedEx package enclosing financial records |
| 17 | 06/03/2016 | Company A | BECK d/b/a Creative Consultants | U.S.P.S mail enclosing a check in the amount of $25,830.00 |
| 18 | 07/18/2016 | BECK | M.B. | FedEx package enclosing financial records |
| 19 | 07/19/2016 | Company A | BECK d/b/a Creative Consultants | U.S.P.S. mail enclosing a check in the amount of $22,441.86 |
| 20 | 10/12/2016 | BECK | M.B. | FedEx package enclosing financial records |
| 21 | 12/27/2016 | BECK | M.B. | U.S.P.S. mail enclosing financial records |
| 22 | 10/27/2017 | Company A | BECK d/b/a Creative Consultants | U.S.P.S. mail enclosing a check in the amount of $30,150.00 |
| 23 | 12/19/2017 | Company A | BECK d/b/a Creative Consultants | U.S.P.S. mail enclosing a check in the amount of $25,830.00 |

Case 1:19-cr-00184-MHC-JSA   Document 1   Filed 05/14/19   Page 11 of 14

| 24 | 05/30/2018 | Company A | BECK d/b/a Creative Consultants | U.S.P.S mail enclosing a check in the amount of $30,150.00 |

All in violation of Title 18, United States Code, Section 1341.

## Counts 25 through 38
## (Money Laundering)

27. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 through 23 of this Indictment as if fully set forth here.

28. On or about the dates set forth in the following table, in the Northern District of Georgia, the defendant,

JIM C. BECK,

did knowingly engage in monetary transactions affecting interstate commerce, by and through a financial institution, as set forth below, each such transaction involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud and mail fraud:

| Count | Date | Description |
|---|---|---|
| 25 | 02/01/2016 | $24,928.60 deposit of GUA funds into Company A account at United Community Bank |
| 26 | 05/31/2016 | $10,299.47 deposit of Company D funds into GA Christian Coalition account at United Community Bank |
| 27 | 06/06/2016 | $25,830.00 deposit of Company A funds into Creative Consultants account at SunTrust Bank |
| 28 | 07/19/2016 | $28,700.00 deposit of Company B funds into Company A account at United Community Bank |

| 29 | 07/19/2016 | $22,441.86 deposit of Company A funds into Creative Consultants account at SunTrust Bank |
| 30 | 10/12/2016 | $19,383.04 deposit of Company D funds into GA Christian Coalition account at United Community Bank |
| 31 | 12/08/2016 | $33,500.00 deposit of Company C funds into Company A account at United Community Bank |
| 32 | 12/20/2016 | $28,700.00 deposit of Company B funds into Company A account at United Community Bank |
| 33 | 08/22/2017 | $33,500.00 deposit of Company C funds into Company A account at United Community Bank |
| 34 | 10/12/2017 | $37,300.00 deposit of GUA funds into Company A account at United Community Bank |
| 35 | 10/23/2017 | $33,500.00 deposit of Company C funds into Company A account at United Community Bank |
| 36 | 11/01/2017 | $30,150.00 deposit of Company A funds into Creative Consultants account at SunTrust Bank |
| 37 | 12/18/2017 | $25,830.00 deposit of Company A funds into Creative Consultants account at SunTrust Bank |
| 38 | 06/06/2018 | $30,150.00 deposit of Company A funds into Creative Consultants account at SunTrust Bank |

All in violation of Title 18, United States Code, Section 1957.

### Forfeiture

29. Upon conviction of one or more of the offenses alleged in Counts 1 through 24 of this Indictment, the defendant,

JIM C. BECK,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations. The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts 1 through 24 of this Indictment.

30. Upon conviction of one or more of the offenses alleged in Counts 25 through 38 of this Indictment, the defendant,

JIM C. BECK,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts 25 through 38 of this Indictment.

If, any property subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of any other property of the defendant up to the value of the forfeitable property, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A ___True___ BILL

_____
FOREPERSON

*(signature)*
BYUNG J. PAK
*United States Attorney*
Georgia Bar No. 559457

*(signature)*
BRENT ALAN GRAY
  *Assistant United States Attorney*
Georgia Bar No. 155089

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000

14