IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:19-CR-184-MHC-JSA |
| JIM C. BECK | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION AND MEMORANDUM TO DISQUALIFY COUNSEL AND TO SUPPRESS STATEMENTS

COMES NOW Defendant, Jim C. Beck, by and through his counsel of record, and moves the Court for an order disqualifying the prosecutors and agents in this action, and suppressing statements made by Jim Beck, as a sanction for the government's violations of the Georgia Rules of Professional Conduct, this Court's Local Rules, the Citizens Protection Act of 1999 codified at 28 U.S.C. § 530B (the "McDade Amendment"), the policies of the United States Department of Justice ("DOJ"), and Jim Beck's constitutional right to due process by contacting him through an agent and secretly recording him notwithstanding the government's knowledge at the time that he was represented by counsel.

1

I.

Statement of Facts

In late June 2018, Defendant became aware that a grand jury sitting in the Northern District of Georgia had issued a grand jury subpoena to the Georgia Underwriting Association ("GUA"), an organization for which Jim Beck had long served as General Manager. The grand jury subpoena sought documents related to his tenure at GUA, including "his personnel, employment, time sheet, compensation, disciplinary history, and ethics records." In a request that was tied closely together with allegations made in the later indictment, the grand jury subpoena sought copies of "Financial Disclosure Statements, Requests for Permission to Perform Outside Employment Forms, Employee Ethics Pledges, and any related records completed by or associated with" Mr. Beck. The grand jury subpoena indicated that responsive documents should be sent to then-Assistant United States Attorney ("AUSA") Lynsey Barron.

Immediately after becoming aware of the criminal investigation and the issuance of the grand jury subpoena, Mr. Beck retained the undersigned counsel William H. Thomas, Jr., to represent him in connection with the criminal investigation. Mr. Thomas is a former federal prosecutor who spent 12 years in the U.S. Attorney's Office for the Northern District of Georgia, including six years as the Chief of the Organized Crime and Drug Enforcement Task Force and Narcotics Section. He is now in private practice, and defends individuals in connection with

federal grand jury investigations and criminal proceedings. Mr. Thomas and his area of practice are well known to the prosecutors in this action.

On June 28, 2018, Mr. Thomas contacted then-AUSA Barron and advised her of his representation of Mr. Beck. On July 16, 2018, Mr. Thomas documented that conversation and his representation of Mr. Beck in a letter to then-AUSA Barron that is attached hereto as Exhibit A. In relevant part, that letter stated as follows:

> In our conversation . . . [y]ou advised that [Mr. Beck] is the subject of an investigation as that term is defined by the United States Attorney's Manual.
>
> On a related note, and as we discussed in our conversation, I am not aware of any facts about Mr. Beck that would give rise to any criminal liability. . . . If the Government is willing to disclose the facts and circumstances which have apparently given rise to this matter, Mr. Beck is willing to address that <u>through counsel</u>.

Thomas letter to AUSA Barron (July 16, 2018) (emphasis added).

The telephone conversation and written correspondence between Mr. Thomas and then-AUSA Barron gave the U.S. Attorney's Office actual knowledge of the fact that Jim Beck was represented by counsel in connection with its federal criminal investigation. Notwithstanding this knowledge, on December 19, 2018, agents of the Federal Bureau of Investigation ("FBI"), acting at the behest of and on the instructions of the federal prosecutors, surreptitiously recorded conversations between Jim Beck and a witness in the case ("M.B.").

As alleged in the indictment, "Company A was business entity formed . . . by

M.B., a friend and associate of Beck." Indictment ¶ 9. It appears that the FBI, "persuaded" M.B. to call Mr. Beck under the ruse that he had just been contacted by the FBI related to the ongoing criminal investigation. This was an obvious effort by the FBI to get Mr. Beck to make admissions or to obstruct justice. Mr. Beck did neither and instructed M.B. to tell the truth. Undeterred by the lack of any admissions in the phone call, the government "persuaded" M.B. to make two more recorded conversation of Mr. Beck. This was done at a time that the government knew that Mr. Beck had retained counsel and was a represented person.

On May 14, 2019, the grand jury returned an indictment against Mr. Beck which charged him with multiple counts of wire fraud, mail fraud and money laundering (the "Indictment"). The charges all related to Mr. Beck's work at GUA. In particular, the Indictment alleged that Mr. Beck had profited improperly through financial interests in business entities which had done business with GUA. Not surprisingly, the Indictment directly related to the subject matters set out in the grand jury subpoena that had been served on GUA in June 2018, which had led Mr. Beck to retain counsel in this matter and to notify DOJ of that representation.

The government obviously views the secretly-recorded conversations with Mr. Beck as important to its case. The Indictment specifically references one of those recorded conversations, noting that "Beck assured M.B. that his proposal was 'on the up and up.'" Indictment ¶ 12. This same quote appears in the Superseding Criminal Indictment (the "Superseding Indictment") filed on August 14, 2019. See

4

id. at ¶ 13. In short, the prosecutors are relying on a statement from Jim Beck that was obtained in violation of the prosecutors' legal obligations and in violation of Mr. Beck's constitutional and other rights.

II.

**1.     The Prosecutors Violated the Georgia Rules of Professional Conduct.**

The Georgia Rules of Professional Conduct (the "Bar Rules") apply to prosecutors when handling investigations and prosecutions in this Court. See 28 U.S.C. § 530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.").1  The Local Rules of this Court also provide that "[a]ll lawyers practicing before this Court shall be governed by and shall comply with the specific rules of practice adopted by this Court and, unless otherwise provided, with the Georgia Rules of Professional Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of

---

1     The law also provides that "[t]he Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section." Id. at § 530B(b).

5

this court interpreting these rules and standards." LR 83.1C, NDGa.2

The prosecutors' conduct here violated two of Georgia's Bar Rules: Rule 4.2 and Rule 3.4. They will be discussed in turn.

(A)   The Prosecutors Violated Rule 4.2, the "No Contact Rule."

Rule 4.2, commonly referred to as the "no-contact rule," is formally entitled "Communication with Person Represented by Counsel." It states as follows:

> (a) A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.
>
> (b) Attorneys for the State and Federal Government shall be subject to this Rule in the same manner as other attorneys in this State.

Ga. Rules of Prof. Conduct R. 4.2 (emphasis added).

Rule 4.2 is "designed to protect a represented party's right to effective representation of counsel by preventing adverse counsel from taking advantage of such party through undisclosed contact." Askins v. Colon, 270 Ga. App. 737, 740, 608 S.E.2d 6, 9 (2004) (quoted by Peery v. Serenity Behavioral Health Sys., No. CV 106-172, 2009 WL 10678746, at *3 (S.D. Ga. Apr. 14, 2009)). As the Georgia

---

2   This Court has previously applied Rule 4.2 to attorneys practicing before it. See, e.g., United States ex rel Harris v. Lockwood Martin Corporation, No. 1:08-CV-3819-AT, 2013 WL 12328947, at *1– 4 (N.D. Ga.Feb. 5, 2013). The court has also indicated that, in interpreting and applying the Bar Rules, reliance may be placed on interpretations of those rules by the Georgia appellate courts. Id.; see also Jones v. City of Coll. Park, Georgia, No. 1:05-CV-1797-JTC, 2009 WL 10666066, at *1–2 (N.D.Ga. Aug. 26, 2009).

Supreme Court has noted, "[l]awyers should not be able to contact and attempt to manipulate the clients of fellow members of the bar, especially when the lawyer's purpose in doing so is to serve his or her own self-interest in disregard of the welfare of the other lawyer's client." Formal Advisory Opinion No. 94-3.

Rule 4.2, which uses the word "person" rather than "party," applies to the prosecutors' pre-indictment contact with Mr. Beck. See United States v. Tapp, No. CR107-108, 2008 WL 2371422 (S.D.Ga. June 4, 2008) (Georgia's no-contact rule applies pre-indictment). This conclusion is supported by Comment 2 to Rule 4.2, which states as follows:

> Communications authorized by law also include <u>constitutionally permissible</u> investigative activities of lawyers representing governmental entities, directly <u>or through investigative agents</u>, prior to the commencement of criminal or civil enforcement proceedings, <u>when there is applicable judicial precedent that either has found the activity permissible under this Rule</u> or has found this Rule inapplicable. However, the Rule imposes ethical restrictions that go beyond those imposed by constitutional provisions.

Ga. Rules of Prof. Conduct R. 4.2, cmt. 2 (emphasis added).[3]

The language of Rule 4.2(a) and Comment 2 make it clear that federal prosecutors in Georgia may contact a represented person through investigative

---

3   Comments to the rules are relevant authority. See, e.g., United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A., No. 3:15-CV-122 (CDL), 2019 WL 1966116 (M.D.Ga. May 2, 2019) ("The Court acknowledges that the Comments to the Rules may not be binding on this Court; however, it would be judicial arrogance to ignore the commentary in favor of what the Court may believe would be the better rule. . . . Accordingly, the Court applies Rule 4.2 as its drafters intended . . . .").

agents prior to indictment only if such activities are (a) authorized by a specific statute, (b) authorized by a court order, or (c) constitutionally permissible and done in accordance with judicial precedent that has found the activity permissible <u>under Georgia Rule 4.2</u>.

None of these conditions were met in this case. There is no statute authorizing the contact. The prosecutors neither sought nor obtained a court order, which was the route that should have been taken given the absence of controlling judicial precedent. Finally, there is no judicial precedent interpreting the Georgia rule to permit such investigative activities. To the contrary, the one federal court in Georgia that has discussed this issue most extensively has concluded that "pre-indictment contact with represented persons should not be the Government's standard practice," and that "[f]or the Government to go behind a lawyer's back is a practice that leads to mischief." <u>Tapp</u>, supra at *16.

In short, the prosecutors in this action violated Georgia Rule 4.2 by contacting Jim Beck through agents, knowing that he was represented by counsel, and recording him making statements about the subject matter of the government's criminal investigation and this prosecution.

**(B)** **<u>The Prosecutors Violated Rule 3.4</u>**.

In engaging in these activities, the prosecutors also violated Rule 3.4(g), entitled "Fairness to Opposing Party and Counsel." The rule provides in relevant part that "[a] lawyer shall not . . . (g) use methods of obtaining evidence that

violate the legal rights of the opposing party or counsel . . . ." The undercover taping of conversations with a represented person, which recordings were done at the behest of prosecutors, violated Jim Beck's rights, as well as his counsel's right to prevent unauthorized communications between his client and counsel representing an adverse party.

## 2. The Prosecutors Violated the DOJ's Policies and Procedures and Defendant's Rights to Due Process.

In engaging in this conduct, the prosecutors also violated the publicly known policies and procedures of the Department of Justice, policies and procedures which were adopted in part to protect the rights of criminal targets such as Mr. Beck. In the process, the prosecutors also violated Mr. Beck's rights to due process under the Fifth Amendment to the Constitution.

The DOJ's policies on the no contact rule state in relevant part as follows:

Rule 4.2 of the American Bar Association's Model Rules of Professional Conduct provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so by law or a court order." (2002). <u>Department attorneys should be guided by the relevant state's or federal district court's rule and interpretations of that rule</u>. . . .

<u>Department attorneys should consider the following issues when they analyze the relevant rule of professional conduct regarding communications with represented persons</u>. . . .

> G. What constitutes a contact that is "authorized by law." Generally, the case law recognizes covert contacts in non-custodial and pre-indictment situations as "authorized by law."

Justice Manual § CRM 296 (2018) (emphasis added). In support of the last sentence in this section, the Justice Manual cites cases from other jurisdictions, but none from the Eleventh Circuit or from federal district courts within it.

It is particularly important that these policies instruct prosecutors, when attempting to determine whether a given contact is "authorized by law," to focus on whether there is a specific statute, a court order, or relevant case law "in the particular jurisdiction in which they propose a contact with a represented person." As noted above, there is no case law in the Eleventh Circuit or in the Georgia appellate courts that interprets Georgia Rule 4.2 to permit the type of contact that the prosecutors engaged in here. In moving forward with such contact without seeking a court order, and without being able to point to any authorizing precedent in the Eleventh Circuit or Georgia, the federal prosecutors violated not only Bar Rules 4.2 and 3.4, but they also violated the Department of Justice's own policies and procedures on the no contact rule.

The prosecutors' violation of the DOJ Policy Manual resulted in a violation of Mr. Beck's rights to due process under the Fifth Amendment to the Constitution. This result is supported by the reasoning in United States v. Koerber, 966 F. Supp.

2d 1207 (D. Utah 2013). [4] In that case, the court concluded that the government's Rule 4.2 violation, and its violation of federal agency policies designed to protect citizens' constitutional rights, resulted in a due process violation under the Fifth Amendment. Id. at 1234..[5] The court noted that these cases establish that due process may be violated when an agency violates an internal regulations and the breach affected the defendant's conduct.

In this case, the DOJ's internal policies on the no contact rule were designed to ensure that federal prosecutors only contact represented persons in circumstances where they were authorized by law to do so. Such regulation is necessarily designed not only to ensure that federal prosecutors comply with the

---

[4] The case in which this opinion was issued ("Koerber I") was subsequently dismissed on other grounds, and a separate prosecution was initiated. The judge handling that later case ("Koerber II") disagreed with the analysis of the no contact issues from the different judge in Koerber I. See United States v. Koerber, No. 2:17-CR-37-RJS-PMW, 2017 WL 3172809 (D. Utah July 25, 2017). Other courts have, however, praised the decision. See United States v. Curious Goods, L.L.C., No. CRIM 12-00146-06, 2014 WL 345235, at *8 (W.D. La. Jan. 28, 2014) ("In a well-reasoned analysis a Utah district court recently found that a violation of Rule 4.2 of Utah's Rules of Professional Conduct was a violation of federal law (28 U.S.C. § 530B) and denied the defendant due process under the Fifth Amendment.").

5 This line of Supreme Court cases linking violations of agency rules with due process violations has been discussed or mentioned in Eleventh Circuit cases such as United States. v. Teers, 591 Fed. Appx. 824 (11th Cir. 2014) (alleged due process violation stemming from federal agents' failure to follow IRS policy manual) and Rowe v. U.S. Attorney General, 545 Fed. Appx.888, 890(11th Cir. 2013) ("To ensure due process, the BIA is required to follow its own regulations when exercising its discretion and issuing a decision.") (citing Accardi).

law, but also that in carrying out criminal investigations they do not trample on the constitutional and other rights of criminal targets and defendants.

In this case, the DOJ's manual specifically warns prosecutors to ensure that there is governing law in the relevant jurisdiction that permits covert contact with a represented person before initiating that contact. Mr. Beck was entitled to presume that the prosecutors would comply with those rules. Those rules were breached, and Mr. Beck's conduct was altered as a result. Under the line of Supreme Court cases discussed above, this violated his right to due process.

### 3. **Defendant is Entitled to the Remedies Sought in this Motion.**

For the reasons set out below, Mr. Beck is also entitled to the remedies sought herein.

#### A. **Disqualification of the Prosecutors and Agents is Warranted.**

The Court has authority to disqualify the prosecutors and agents in this case based upon the violations set out above. The Eleventh Circuit has noted that, in deciding whether to grant a motion to disqualify, a district court must "identify a specific rule of professional conduct applicable to that court and determine whether the attorney violated that rule." Herrmann v. Gutter Guard, Inc., 199 F. Appx. 745, 755 (11th Cir. 2006) (granting defendants' motion to disqualify when the court concluded that both elements of Rule 1.9 for conflict of interest were satisfied); see also Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561–62 (11th Cir. 1997) (court must clearly identify specific Rule of Professional Conduct which is

applicable to the relevant jurisdiction and must conclude that the attorney violated that rule) (adding that court should not disqualify attorney on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct); see also Price v. Gwinnett Family Dental Care, LLC, No. CIV 1:06-CV-2659-BBM-GGB, 2007 WL 3477771, at *3–4 (N.D. Ga. Oct. 31, 2007); Armor Screen Corp. v. Storm Catcher, Inc., 709 F. Supp. 2d 1309, 1320 (S.D. Fla. 2010).[6]

In this case, for the reasons set out above, the prosecutors' conduct violated specific rules of professional conduct, specifically Bar Rules 4.2 and 3.4. This violation warrants disqualification of both the prosecutors and agents currently assigned to the case.

This conclusion is supported by the reasoning from then-Chief Judge William T. Moore of the United States District Court for the Southern District of Georgia in Tapp, supra. Discussing the no contact rule in that case, Chief Judge Moore noted that federal courts have the power to suspend a prosecutor from a case based on a violation of Rule 4.2:

---

[6] Georgia state courts have also ruled that they have authority to order disqualification for violations of the Bar Rules, including Rule 4.2. See Ford Motor Co. v. Young, 322 Ga. App. 348, 745 S.E.2d 299 (2013) (Georgia state courts have inherent authority to disqualify attorneys for violations of the Georgia Rules of Professional Conduct); Askins v. Colon, 270 Ga. App. 737, 608 S.E.2d 6 (2004) (in the event of a violation of Rule 4.2, "a trial court has the discretion to order the less serious sanction of disqualification"); Piedmont Hosp. v. Reddick, 267 Ga.App. 68, 599 S.E.2d 20 (2004) (finding that trial court had authority and discretion to disqualify attorney based on violation of Rule 4.2).

13

> When judges are advised of a prosecutor's violation of the No-Contact Rule, they have the authority to act and should be willing to do so. The overwhelming majority of ethical and professional lawyers expect and want them to do so. Judges must not tolerate a prosecutor's violation of the No-Contact Rule. If the judge sees a violation and does nothing, then the judge sends the wrong message to the members of the bar.
>
> When the court endeavors to protect the integrity of the judicial system, then a sanction of the attorney is clearly an appropriate remedy. The court has several arrows in its quiver. Courts have the power to . . . suspend the prosecutor from the case . . . .

Tapp, 2008 WL 2371422 at *18; see also In re Maxwell, 280 Ga. 304, 304–05, 627 S.E.2d 16, 17 (2006) (suspending a lawyer for violating Rule 4.2 by talking to represented parties).

### B. Suppression of the Statements is Warranted as a Result of the Due Process Violation.

In addition, suppression of the statements taken from Jim Beck is warranted on the basis of the due process violation discussed above. See Koerber, supra (ordering suppression based on violation of due process arising from violation of agency rules).

This conclusion is not undermined by the Eleventh Circuit's decision in United States v. Lowery, 166 F.3d 1119 (11th Cir.1999). In that case, the Eleventh Circuit concluded that neither a violation of a state bar rule, a local rule of court that incorporates those state bar rules, or the McDade Amendment justifies suppression of evidence under the Federal Rules of Evidence. Id. at 1125. In that case, however, it appears that no assertion was made that the prosecutors' conduct

violated the defendants' rights to due process.

As the Eleventh Circuit noted in <u>Lowery</u>, Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided <u>by the Constitution of the United States</u>, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." <u>Lowery</u>, 166 F. 3d at 1125 (emphasis added). Whereas <u>Lowery</u> correctly noted that state bar rules and the local rules of courts do not appear in the list of items that affect the admissibility of evidence, the Constitution does appear in that list. <u>Id.</u> Hence neither <u>Lowery</u> nor F.R.E. 402 is a bar to suppression of the recorded statements taken from Jim Beck in violation of his right to due process.

If the Court concludes that suppression is unwarranted or unauthorized, then in the alternative Mr. Beck requests a limiting instruction informing the jury that, while the statements taken from him are admissible, they were obtained in violation of the Georgia Rules of Professional Conduct.

WHEREFORE, Mr. Beck respectfully requests this Court hold an evidentiary hearing to address this matter and grant the relief requested herein.

Dated: September 4, 2019.

/s/ William H. Thomas Jr.
William H. Thomas, Jr.
The W.H. Thomas Firm, LLC
Georgia Bar No. # 706610
511 East Paces Ferry Road
Atlanta, GA 30305
bill@whthomasfirm.com
(404) 897-3523 (office)
(678) 965-1781 (fax)

/s/ Douglas Chalmers Jr.
Douglas Chalmers, Jr.
Chalmers & Adams, LLC
Georgia Bar No. 118742
5805 State Bridge Rd. #G77
Johns Creek, GA 30097
dchalmers@cpblawgroup.com
770-630-5927 (office)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 1:19-CR-184-MHC-JSA |
| ) | |
| JIM C. BECK ) | |
| ) | |
| Defendant. ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I served a copy of the foregoing Defendant's Motion to Disqualify Counsel and To Suppress Statements on all parties of record via the electronic filing system ("ECF").

Dated: September 4, 2019.

/s/ William H. Thomas Jr.
William H. Thomas, Jr.
The W.H. Thomas Firm, LLC
Georgia Bar No. # 706610
511 East Paces Ferry Road
Atlanta, GA 30305
bill@whthomasfirm.com
(404) 897-3523 (office)
(678) 965-1781 (fax)