IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*v.*<br><br>JIM C. BECK | Criminal Action No.<br><br>1:19-CR-184-MHC-JSA |

**Government's Response to Defendant's Motion to Suppress Evidence and Fruits Seized Pursuant to the September 13, 2019 Search Warrant Directed to Google**

The United States of America, by Byung J. Pak, United States Attorney, and Brent Alan Gray and Sekret T. Sneed, Assistant United States Attorneys for the Northern District of Georgia, files this Response to Defendant's Motion to Suppress Evidence and Fruits Seized Pursuant to the September 13, 2019 Search Warrant Directed to Google.  The government urges this court to reject Defendant Beck's attempt to bootstrap his argument to defeat the September 13, 2019 search warrant on his claim that an earlier search warrant was deficient and that the agent previously acted in bad faith.

**1. Relevant Procedural History**

On May 14, 2019, Defendant Beck was charged by a federal grand jury in a 38-count indictment alleging that Beck committed crimes of wire fraud, mail fraud

1

and money laundering. (Doc. 1). On August 14, 2019, a federal grand jury returned a superseding indictment charging Beck with wire fraud, mail fraud, money laundering, and aiding the filing of false tax returns. (Doc. 22). On September 6, 2019, Beck filed a Motion to Suppress Evidence and Fruits Seized Pursuant to the [April 25, 2019] Search Warrant Directed to Google. (Doc. 31). On October 11, 2019, the government responded to Beck's motion to suppress the April 25, 2019 search warrant by arguing that motion is moot in light of a revised search warrant executed on September 13, 2019. (Doc. 36). On October 31, 2019, Beck filed a Reply to Government's Response to Defendant's Motion to Suppress and Second Motion to Suppress the "New" [September 13, 2019] Email Search Warrant. (Docs. 40 & 43).

This response is filed to address Beck's motion to suppress evidence seized pursuant to the September 13, 2019, search warrant. (Doc. 40).

## 2. Relevant Factual Summary

On April 25, 2019, Magistrate Judge Linda T. Walker issued a search warrant for information associated with the email address jimcbeck@gmail.com that was stored at premises, owned, maintained, controlled, or operated by Google, LLC. The affidavit in support of the search warrant outlined Beck's alleged scheme to steal more than $2,000,000 from his former employer, the Georgia Underwriting Association (GUA). The affidavit included dates of the alleged illegal conduct ranging from February 22, 2013 to June 15, 2018. (April 25, 2019 SW Affidavit, p. 4, ¶¶ 10, 12). Although this date range was alleged in the

affidavit, Judge Walker's warrant, prepared and submitted by the government, did not include any date limitation but limited the seizure to evidence related to the crimes of wire fraud and money laundering that were described in the affidavit. (April 25, 2019 SW Attachments A and B). However, even without a specific date range stated in the warrant, when the affiant, FBI Special Agent Steve Dunn, served the April 25, 2019 search warrant to Google, he limited the request for jimcbeck@gmail information to the date range of January 1, 2013 to January 13, 2019.[1]

Google produced the requested information on May 1, 2019. All information produced by Google in response to the April 25, 2019 search warrant was submitted to FBI Special Agents Ashley Chavez and Amanda Lee in order for Agent Chavez and Agent Lee to review the materials and filter out any potentially privileged communications. These filter agents never completed their review. But, to date, only filter agents Chavez and Lee have been exposed in any manner to any of the information produced by Google as a result of the April 25, 2019 search warrant. This means that no member of the prosecution team, which

---

[1] Google accepts service of search warrants through an internet-based portal. The Google portal requires agents to enter a date range for the requested information. In serving the April 25, 2019 search warrant, Agent Dunn requested information from January 1, 2013 (approximately three months prior to the first allegedly fraudulent payment from GUA to Green Tech) to January 13, 2019 (the day before Beck was sworn into office as Georgia's Insurance Commissioner). (See Exhibit A).

includes Agent Dunn, FBI Special Agent Davida Law, IRS Special Agents John M. Relyea, Jr., and Wesley Cooper, United States Attorney Byung J. Pak, AUSA Brent Alan Gray, and AUSA Sekret Sneed, has reviewed any of the information produced by Google as a result of the April 25, 2019 search warrant.

On September 6, 2019, Beck filed a Motion to Suppress Evidence and Fruits Seized Pursuant to the Search Warrant Directed to Google.  (Doc. 31).  Beck argued that the April 25, 2019 search warrant was unconstitutionally overbroad on its face because it contained ". . . no date restriction either in the information to be disclosed by the provider or the items to be seized."   (*Id*. at 11). Additionally, Beck argued that the good-faith exception to the exclusionary rule provided in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), did not apply.  (Doc. 31 at 17-18).

In response to Beck's objection to the April 25, 2019 search warrant and because no fruits of that search warrant had been provided to any member of the prosecution team, the government sought a revised search warrant.  On September 13, 2019, Magistrate Judge Russell G. Vineyard signed a search warrant which sought the jimcbeck@gmail.com information from Google but limited the request to the date range of November 22, 2012 to September 15, 2018.[2]  (Attached as Exhibit B).   The agent's affidavit in support of the second

---

[2] The date range in the September 13, 2019 search warrant is exactly the range Beck suggested would be proper under *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017) and *In re Search of Information Associated with Fifteen Email Addresses*, 2017 WL 4322826 (M.D. Ala. 2017).  (Doc. 31 at 8-9).  While Google can conduct searches based on objective criteria like date ranges, the company's law enforcement guidelines state that ". . . Google can only conduct a search based on

search warrant disclosed the April 25, 2019 search warrant and Beck's argument about the warrant's defects. (September 13, 2019 SW Affidavit, p. 20-22, ¶¶ 60-64). On September 26, 2019, Google responded to the second search warrant. On October 10, 2019, the government provided Beck's attorneys with a copy of the second search warrant and made available all the information produced by Google in response to the September 13, 2019 search warrant.[3] On October 31, 2019, Beck filed a Reply to Government's Response to Defendant's Motion to Suppress and Second Motion to Suppress the "New" Email Search Warrant arguing that the September 13, 2019 search warrant is also invalid. (Docs. 40 & 46).

The information produced by Google in response to the second search warrant has been submitted to new filter agents. These agents, FBI Special Agents Paul Costa and Greg Rice, are currently reviewing the information produced by Google and are filtering out any potentially privileged communications. This filter review is supervised by AUSA Angela Adams. The prosecution team will not review this information until all potentially privileged communications have been removed.

---

objective criteria like date ranges. We are not familiar with your investigation and cannot make discretionary decisions such as only producing evidence of specific crimes. If your items to be seized limits the production or records based on subjective criteria, we will not be able to comply." (See Exhibit C).

[3] This information produced by Google had to be processed for viewing by Beck's attorneys and was not available prior to October 10, 2019.

The prosecution team has no plans to ever review or in any way utilize the information provided by Google in response to the challenged April 25, 2019 search warrant. Therefore, there will be no evidence to suppress with regard to the April 25, 2019 search warrant.

**3. Legal Argument Regarding the September 13, 2019 Search Warrant**

Beck's argument to suppress any potential evidence provided by Google in response to the September 13, 2019 search warrant is a relatively simple one. Beck argues that the April 25, 2019 search warrant was constitutionally invalid and that Agent Dunn acted with an intentional bad purpose and in bad faith when he obtained and executed that warrant. (Doc. 43 at 4). Without citing any relevant authority, Beck then argues that constitutional infirmities coupled with Agent Dunn's bad faith carry over from the April 25, 2019 warrant and invalidate the September 13, 2019 warrant.

Although the government continues to maintain that the question of the validity of the April 25, 2019 search warrant is moot in light of the execution of the September 13, 2019 search warrant, Beck's motion to suppress evidence from the second search warrant invites the government to defend the first one. Beck's argument that the first warrant was issued by Judge Walker in violation of his Fourth Amendment rights and his baseless claim that Agent Dunn acted in bad faith should not persuade this court to suppress evidence seized with the September 13, 2019 warrant.

### (a) The April 25, 2019 Search Warrant

The April 25, 2019 search warrant was executed following an FBI investigation of allegations that Defendant Beck, over the course of approximately six years, used a variety of complex fraud schemes to steal and conceal more than $2,000,000 that belonged to his former employer. While the Fourth Amendment requires a search warrant to particularly describe the things to be seized, it "is universally recognized that the particularity requirement must be applied with a practical margin of flexibility," taking into account the nature of the items to be seized and the complexity of the case under investigation. *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). Thus, "in cases . . . involving complex financial transactions and widespread allegations of various types of fraud, reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the paper puzzle" "from a large number of seemingly innocuous pieces of individual evidence." *Id*.

In this Circuit, a search warrant's description of things to be seized is "sufficiently particular when it enables the searcher reasonably to ascertain the identity of the things to be seized." *Id.*; *United States v. Betancourt*, 734 F.3d 750, 754-55 (11th Cir. 1984) (citation omitted). Accordingly, a description of the property to be seized "will be acceptable if it is as specific as the circumstances and the nature of the activity under investigation permit." *Wuagneux*, 683 F.2d at 1349; *see Betancourt*, 734 F.3d at 755 (stating that "elaborate specificity is unnecessary"). In other words, "[a] warrant is sufficient where it describes the

place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Aguirre*, 368 F.App'x 979, 987 (11th Cir. 2010) (per curiam) (unpublished) (quoting *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986)).  This standard of particularity is one of practical accuracy rather than technical nicety.  *Betancourt*, 734 F.3d at 754-55 (quotation omitted).

Just because a warrant calls for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity.  And in the case of search warrants of email accounts, courts have routinely held "that a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable."  *See United States v. Lee*, No. 1:14-CR-227-TCB, 2015 WL 5667102, *3 (N.D.Ga. Sept. 25, 2015) (collecting cases); *see also United States v. Sharp*, 1:14-CR-227-TCB, 2015 WL 4644348 *10 (N.D.Ga. Aug. 4, 2015) (order adopting magistrate's report and recommendation denying defendant's motion to suppress search warrant for Facebook account and collecting cases regarding email search warrants).

The Attachment B to both the April 25, 2019 and the September 13, 2019 search warrants constrained the agents' discretion in what to seize from Google. (Exhibit A, Attachment B). The warrants only allowed the agents to seize jimcbeck@gmail.com records and content relating to communications of particular individuals and business entities associated with the alleged criminal

activities and other evidence reasonably related to the crimes of wire fraud and money laundering.

With good reason, Beck asks this court to consider both search warrants in light of the Eleventh Circuit's relatively recent opinion in *United States v. Blake*. 868 F.3d 960 (11th Cir. 2017). In *Blake*, the court found it "troubling" when searches of email accounts do not have temporal limitations. Beck argues that the *Blake* opinion automatically invalidates the April 25, 2019 search warrant because the warrant was not temporally limited and was ". . . an internet-era version of a 'general warrant.'" (Doc. 31 at 10 and 11). A careful reading of *Blake* makes it clear that the opinion does not go that far. *See United States v. Roper*, 2018 WL 1465765 (S.D. Ga. 2018) (court denied motion to suppress email search warrant that authorized production of entire email account rather than a limited production relevant to investigation).

In *Blake*, the defendants were running a prostitution ring and posted advertisements for prostitution on a website called Backpage. *Blake* at 966. The FBI obtained a search warrant for Microsoft to produce from two email accounts "certain categories of emails . . . linked to the sex trafficking charges against [the defendants]." *Id*. For example, the warrant required Microsoft to turn over all emails related to Backpage.com or other online adult service websites. *Id*. The FBI also obtained warrants for two Facebook accounts, requiring Facebook to disclose "virtually every type of data that could be located in a Facebook account," without subject matter or temporal limitations. *Id*. However, the

government could only seize information from the disclosure "that 'constituted fruits, evidence and instrumentalities' of a specified crime." *Id*. at 967.

The *Blake* defendants argued the warrants did not satisfy the Fourth Amendment particularity requirement. *Id*. at 973. The court disagreed with respect to the email search warrant. The court held that the Microsoft warrant complied with the particularity requirement, despite the absence of any temporal limitations, because it limited disclosure to discrete categories of emails connected to the alleged crime. *Id*. at 973 n.7. The court commented the Facebook warrants were "another matter" because they required disclosure of virtually every kind of data that could be found in a social media account" from inception of the accounts, including every private message, photograph, private or public group, Facebook search, marketplace purchase, and contact list. *Id*. at 966-67, 974. While never holding the Facebook warrants violated the particularity requirement, the court commented the government could have easily "undermined" any such claim by reasonable limitations concerning the time period and/or topical scope of the warrants. In support, the court pointed to published Facebook guidelines for law enforcement showing that, "when it comes to Facebook account searches, the government need only send a request with specific data sought and Facebook will response with precisely that data." *Id*. at 974. Despite these concerns, the court declined to decide whether the Facebook warrants satisfied the particularity requirement and instead relied on the *Leon* good faith exception to uphold the warrants. *Id*.

Here, the affidavit supporting the April 25, 2019 Google search warrant explained that Beck routinely used his personal email account to support an alleged fraud scheme that ran from at least 2013 and to at least 2018.  But for including a date limitation, the April 25, 2019 warrant was as "specific as the circumstances and the nature of activity under investigation" allowed in piecing together the "paper puzzle" in this case "involving . . . widespread allegations of various types of fraud. . . "  *See Wuagneux*, 683 F.2d at 1349.  Attachment B to the warrant sufficiently described the information to be disclosed from the jimcbeck@gmail.com email account and both described and constrained the specific evidence which the government was allowed to seize within that body of information.  Further, the affidavits supporting both warrants specifically point out that any email evidence associated with wire fraud and money laundering was expected to be tied to Beck's fraudulent transactions occurring between 2013 and 2018 and involving Creative Consultants, GA Christian Coalition, Green Technology Services, Lucca Lu, LLC, Mitigation Solutions, LLC, and Paperless Solutions, LLC.

Although this court does not have to decide whether the April 25, 2019 search warrant satisfied the Fourth Amendment's particularity requirement, a search warrant for Beck's Google email account is very different than the Facebook search warrant at issue in *Blake*.  Unlike Facebook, nothing in Google's law enforcement guidelines (see Footnote 2) suggests that the company is willing to conduct searches and respond as Facebook was apparently willing to do in

11

*Blake* scenario.  Additionally, investigating the multi-million dollar fraud allegations made against Beck is likely more complex than prostitution, which makes limitations by topic or some list of key words far more difficult.  The criminal allegations against Beck present a "paper puzzle" just as the Eleventh Circuit acknowledged in the aforementioned *Wuagneux* decision.  *Wuagneux*, 683 F.2d at 1349.  Unlike the prostitution ring at issue in *Blake*, Beck's alleged criminal activity included years of wire fraud and money laundering with at least eight different business entities and various individuals associated with those businesses.

In support of his argument to defeat the April 25, 2019 search warrant, Beck also cited *In re Search of Information Associated with Fifteen Email Addresses*, 2017 WL 4322826, (M.D.Ala. September 28, 2017).  In that post-*Blake* case, a district court judge found that one way to assure particularity in a search warrant for email information is to restrict how the government searches the email data. *Id*. at 7.  The district court then endorsed the government's offer to include temporal restrictions on the email data to be turned over by the provider based on an individualized assessment of the probable cause evidence for each email account. *Id*. at 10.  But in his argument, Beck suggested that the district court had an issue with the Fed. R. Crim. P. 41 two-step process of obtaining information from the provider and then seizing a subset of that information linked to probable cause.   (Doc. 31 at 8).  According to Beck, the district judge of *In re Search of Information Associated with Fifteen Email Addresses* "applied the

12

teachings of *Blake* to an email search warrant using the two-step process and found that it violated the Fourth Amendment." *Id*. This is not what the court decided. In fact, the district judge ultimately allowed the government to go forward with a two-step process which "mean[t] allowing a cursory initial review of the emails" to locate content relevant to its investigation. *Id*.

Beck was also incorrect when argued that the Eleventh Circuit has specifically rejected the two-step process of reviewing email evidence. (Doc. 31 at 11). Instead of citing any Eleventh Circuit authority to support his insistence that the two-step search procedures for electronic evidence violates the Fourth Amendment, Beck cited *In Re App.*, 2013 WL 4647554, at *9 (D. Kan. August 27, 2013) (Doc. 40 at 3). Beck quoted this report and recommendation of a magistrate judge in Kansas for his own proposition that although nothing in Fed. R. Crim. P. 41 "may specifically preclude the government from requesting the full content of electronic communications in a specific email account, the Fourth Amendment may do so and does here." *Id*. (Doc. 40 at 3). What Beck failed to point out, however, is that the Kansas district court judge declined to adopt that magistrate judge's reasoning and upheld a two-step email warrant. *See United States v. Deppish*, 994 F.Supp. 2d 1211, 1219-20 (D. Kan. 2014). The warrant in *Deppish* required Yahoo to disclose all the email in an account to the government, and it authorized the government to then seize information "concerning activities and identification of any individuals related to crimes of sexual exploitation of minors pursuant to 18 U.S.C. § 2252," *Id*. at 1215. The two-step email warrants in

Beck's case have the same basic structure as the email warrant approved in *Deppish*.

Even if the government was relying on the April 25, 2019 search warrant and that warrant was found to be defective because it was not temporally limited, the good faith exception to the exclusionary rule would have saved the first search warrant.[4]  The exclusionary rule was judicially created to act as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search.  In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424 (1984), the Supreme Court established a good faith exception to the exclusionary rule where law enforcement officers placed reasonably objective reliance on a search warrant later determined to be defective.  In *United States v. Accardo*, 749 F.2d 1477 (11th Cir. 1985), the Eleventh Circuit discussed the good faith exception established by the Supreme Court.  *Leon's* good faith exception does not apply to the following situations: (1) where the magistrate in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would

---

[4] The government strongly disagrees with these assertions that Beck made as part of his motion to suppress the September 13, 2019 search warrant:  "(1) the government acknowledges the merits of Mr. Beck's argument that law enforcement did not act in good faith when getting the [April 25, 2019] warrant; and (2) the government waives any objection to a finding by this Court that it did not act in good faith."  The time for the government to address Agent Dunn's good faith associated with the April 25, 2019 search warrant is now.  (Doc. 43 at 4).

have known was false except for his or her reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Id*. at 1480 & n. 4 (citations omitted). And in deciding whether suppression is required, the totality of the circumstances surrounding the issuance of the search warrant may be considered. *Id.* at 1481. *See also United States v. Herring*, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause.").

Here, Beck does not contend that Magistrate Judge Walker issued the April 25, 2019 search warrant based on any untruthful information presented by Agent Dunn. While Beck insists that Agent Dunn acted in bad faith, he did not cite a single instance of Agent Dunn being dishonest or even inadvertently misleading. Nor does Beck argue that Magistrate Judge Walker "wholly abandoned" her detached and neutral role in finding probable cause to issue the warrant. Beck's only challenge to Agent Dunn's probable cause statement in the April 25, 2019 affidavit is that without a temporal restriction, "the actual probable cause articulated with respect to the subject email address does not support the comprehensive disclosure sought by the government." (Doc. 31 at 14). Finally,

the April 25, 2019 search warrant was not so facially deficient in any respect that it prevented Agent Dunn from presuming it to be valid. For instance, in *Blake*, even though the Facebook warrants "may have violated the particularity requirement . . ." by requiring Facebook to disclose "virtually every kind of data that could be found in a social media account," the court held it was not so facially deficient that the executing officers could not have reasonably believed it to be valid. *Id*. The same is true for the April 25, 2019 search warrant.

Additionally, and perhaps most significantly, Agent Dunn's uncontested actions in executing the April 25, 2019 search warrant undercut Beck's bad faith argument. When Agent Dunn served the April 25, 2019 search warrant through Google's internet-based portal, he entered a request for information from January 1, 2013 to January 13, 2019.[5] This means that Agent Dunn--without being ordered to do so by Judge Walker--used temporal limits to make sure Google only provided email information within the time frame that was relevant to the FBI's fraud investigation.[6]

---

[5] In Beck's Reply and Motion to Suppress the September 13, 2019 search warrant, he incorrectly stated that Agent Dunn orally made this request to Google.

[6] Agent Dunn's own choice of the date restriction for the April 25, 2019 search warrant covered a period of 2,204 days. The date range ordered in the September 13, 2019 search warrant follows the parameters that Beck suggested would be proper under the guidance provided in *Blake* and *In re Search of Information Associated with Fifteen Email Addresses*. (Doc. 31 at 8-9). With those

16

**(b) The September 13, 2019 Search Warrant**

As previously discussed, a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U. S. Const. amend IV. The Fourth Amendment requires searches to be as limited as possible, and the goal is to prevent "rummaging" through a person's belongings by requiring warrants to include a particular description of the things to be seized. *Blake* at 973.

At this point, the government is relying only on the September 13, 2019 search warrant. That search warrant, signed by neutral and detached Magistrate Judge Russell G. Vineyard, unquestionably satisfied the particularity requirement of the Fourth Amendment and is not overbroad. In addition to the specific list of relevant items to be seized as part of its Attachment B, the warrant included the temporal limitations for disclosure that were suggested by *Blake*, *In re Search of Information Associated with Fifteen Email Addresses* and Beck himself. Further, given all the circumstances set forth in Agent Dunn's affidavit, the warrant was supported by ample probable cause to tie Beck's email account to evidence reasonably connected to the crimes of wire fraud and money laundering.

Further, the September 13, 2019 search warrant properly provided that it was to be executed in the manner consistent with the law of the Eleventh Circuit

---

parameters applied, the date range was reduced to 2,124 days--80 days fewer than Agent Dunn's self-imposed date range.

and proscribed by Fed. R. Crim. P. 41--where the government first obtains a collection of information, then seizes what is authorized by the warrant from the information already obtained. Rule 41(e)(2)(B) specifies that a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Therefore the September 13, 2019 search warrant complied with the mandates of the Fourth Amendment and Fed. R. Crim. P. 41.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress Evidence and Fruits Seized Pursuant to the September 13, 2019 Search Warrant Directed to Google should be denied.

Respectfully Submitted,

BYUNG J. PAK
United States Attorney
Northern District of Georgia

/s/Brent Alan Gray
BRENT ALAN GRAY
Assistant United States Attorney
Georgia Bar. No. 155089

/s/ Sekret T. Sneed
SEKRET T. SNEED
Assistant United States Attorney
Georgia Bar No. 252939

600 Richard B. Russell Building
75 Ted Turner Drive SW
Atlanta, Georgia 30303
(404) 581-6000
(404) 581-6181 FAX