# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. |
| | ) | 1:19-CR-184-MHC-JSA |
| JIM C. BECK | ) | |
| | ) | |

## DEFENDANT JIM BECK'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS AND SECOND MOTION TO SUPPRESS THE "NEW" EMAIL SEARCH WARRANT

In an Alice-in-Wonderland response, the government urges this Court to reject Jim Beck's attempt to "bootstrap" his argument that the government lacked good faith in obtaining the first warrant for his email account and thus could not get another identical search warrant. It is the government that is seeking to bootstrap its response to Mr. Beck's argument regarding the government's lack of good faith in obtaining the first warrant. The government states "that this reply is filed to address Beck's motion to suppress evidence seized pursuant to the September 13, 2019, search warrant." Response to Government Motion to Suppress at 2. The response filed by the government is a defense to the first search warrant and not the second warrant.

1

Specifically, as a threshold matter, the government argues that the challenge to the second warrant invites a full-throated defense of the first warrant. The government waived a "full-throated" defense of the first search warrant by not addressing the merits of the first warrant. It is basic pleading law that when a challenge to the first warrant is not met by a response on the merits to that challenge, failing to do so or limiting your response to one particular argument, means that you have waived the other arguments. *See United States v. Madrid*, 916 F.Supp.2d 730, 736 (W.D. Tex. 2012) (finding that the government waived its opposition by failing to respond to an argument).The government's belated attempt to defend its first defective search warrant is too late and unavailing. The government's failure to respond to a defendant's argument should be deemed a waiver.

The government cites two pre-*Blake* magistrate court decisions for the proposition that "in the case of search warrants of email accounts, courts have routinely held 'that a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable." Response at 8. These cases have no precedential value. In any event, to the extent the cases are inconsistent with *Blake*, and both are, they are

overruled. The Eleventh Circuit has made clear that it will not abide a search warrant that has no time limitation.

The government next argues that Attachment B to "both the search warrants constrained the agents' discretion in what to seize from Google." Response at 8. Not so. The first search warrant seized Mr. Beck's entire account and had no time limit. Therefore, all of Mr. Beck's personal emails are in the government possession. Further, emails from Mr. Beck to any of the individuals or companies listed in Attachment B that pre-dated the alleged time period alleged in the indictment were also seized by the government. Therefore, the government's effort to seek refuge in the language of Attachment B is unavailing.

The government then tries to minimize its violation of the Fourth Amendment. The government argues that except for excluding the date limitation the warrant met constitutional muster. This argument is a bad version of "other than that, how was the play, Mrs. Lincoln?" Then the government tries to re-argue that "the affidavits supporting both warrants specifically point out that any email evidence associated with wire fraud and money laundering was expected to have ties to Beck's fraudulent transactions occurring between 2013 and 2018 and involving Creative Consulting, GA Christian Coalition, Green Technology Services, Lucca Lu, LLC, Mitigation Solutions, LLC and Paperless Solutions,

LLC." Response at 11. This is a repackage of the earlier argument. The government does not cite to anything in the attachments that so limit the email search warrant. In fact, as Mr. Beck argued before, several of these entities' existence pre-date the time period of the alleged scheme and there is nothing in the attachments that limit the search to avoid those emails.

The government seeks to find refuge in *United States v. Roper*, 2018 WL 1465765 (S.D.Ga., March 1, 2018). "First, unlike Facebook, nothing in Comcast's law enforcement handbook suggests it is willing to conduct searches and respond, as the *Blake* court describes Facebook's policy, "precisely with the data requested by the government." Law Enforcement Handbook, Comcast Cable, http://xfin.tv/2ojXqXH (last visited Feb. 29, 2018). Absent any indication of such extraordinary cooperation and effort by Comcast, limiting the production to key words or topics would be unworkable and a waste of time." *Id.* at 3. The *Blake* court endorsed limiting both email and Facebook warrants to "the period of time during which [the defendant] was suspected of taking part in the prostitution conspiracy." *Blake*, 868 F.3d at 974. That is the limitation Mr. Beck seeks as well. So any discussion about word search is a red herring.

Second, the government, as the magistrate court did in *Roper*, sought relief from the overbroad warrant by relying on the fact that this investigation is far more

complex than a prostitution ring, and, thus this Court may "justifiably read the warrant with greater practical flexibility." *Roper*, No. CR 117-035, 2018 WL 1465765, at *4 (S.D. Ga. Mar. 1, 2018), *citing United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982). The advent and proliferation of emails and other personal messages means that this Court must be more vigilant to prevent the modern day overbroad search. The Supreme Court has entreated all lower courts to eschew reliance on old Fourth Amendment paradigms. The information sought in *Wuagneux* did not exist, certainly not in the form it exists today. Rummaging through someone's personal email account is particularly evil and this Court should not countenance such conduct. This is particularly true here. Mr. Beck was a public official. He ran for office. No doubt there are emails that the government now has seized that are personal, business and campaign related. These are core First Amendment protected activities. If the email search warrant was limited to the time period of the alleged scheme, then the email search warrants would be justified under the Fourth Amendment. But that is not the case here. It is just untrue that the description of the alleged scheme limits the search warrant sufficiently.

Third, in *Roper*, "[t]he name of the email account, quadar@comcast.net, **by itself** established probable cause to believe Defendants created the account to

conduct Quadar Group business in furtherance of the conspiracy, such that emails from inception of the account forward would likely be relevant to the investigation." *United States v. Roper*, No. CR 117-035, 2018 WL 1465765, at *4 (S.D. Ga. Mar. 1, 2018)(emphasis added), report and recommendation adopted, No. CR 117-035, 2018 WL 1463365 (S.D. Ga. Mar. 23, 2018). Such is obviously not the case here. The email account searched here was [jim.beck@gmail.com](mailto:jim.beck@gmail.com). Nothing about this account suggests that the entire contents would be relevant to a criminal investigation. To the contrary, this email account suggests that it is a personal account that has information that is not relevant to this case.

The government having realized the error of its response to the first motion to suppress the search warrant, now vigorously argues that the agent acted in good faith.[1] The government recites the correct standard for determining whether the government acted in good faith. Specifically, "where, . . . , a warrant is so facially deficient--*i.e.*, in failing to particularize the place to be searched or the thing to be

---

[1] The government relies on facts not supported in the record to advance its argument that the agent acted in good faith. For example, the government states that "Agent Dunn's uncontested actions in executing the April 25, 2019 search warrant through Google's internet-based portal, he entered a request for information from January 1, 2013 to January 13, 2019." Response at 16. It is uncontested because without an evidentiary hearing, there is no way to contest those facts. There is no affidavit by the government that supports those facts either. While the court has scheduled a hearing on the limited issue of whether the government had an independent basis for seeking a second search warrant for the same e-mails, Mr. Beck asks for an evidentiary hearing on the issue of good faith as well, if the government or the court is going to rely on this assertion of fact to support the good faith exception.

seized—that the executing officers cannot reasonably presume it to be valid." Response at 15. Intentionally omitting a date limitation is such a facially deficient warrant. Email search warrants need to have temporal limitations. It is unlikely that the experienced law enforcement agent here ever previously sought a search warrant without a temporal limitation. The US Attorney's Office and the FBI are regularly trained on Fourth Amendment law. The prosecutors in this case no doubt reviewed this search warrant. Both were aware that *Blake* represented a change in the law in the Eleventh Circuit and required a date restriction. Therefore, the warrant here was so facially deficient because it failed to have any date limitation that any reasonable law enforcement officer would know that it was insufficient and lacked probable cause.

Tellingly, the Government fails in its response to balance the deterrent effect of exclusion against the social costs of excluding evidence in this criminal trial, as required by United States Supreme Court precedent. *See Herring v. United States*, 555 U.S. 135, 140 (2009); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).(No doubt it will seek a do-over for its failure.) Here, the costs are small. The government does not attempt to quantify the costs to the prosecution if the evidence is suppressed, as it should be. This is the ideal case to impose the exclusionary rule. It would not hurt the case or the search for justice. As stated

previously, the case was indicted without the benefit of this email evidence. The prosecutors argued vigorously at the bond hearing that it believes its case is strong. The benefits of suppression are tangible and important. The government will no longer apply for a search warrant without a date limitation. A restriction heartily endorsed by the Eleventh Circuit in *Blake*.

The evidence obtained as a result of the email warrant should be suppressed because the law enforcement officials who sought the warrant are not entitled to the good faith exception. The officials knew or should have known that the warrant needed a temporal limitation. If the law condones this conduct, it makes a mockery of the warrant process.

The purpose of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Courts look to all the officials involved in the warrant process. *Id.* at 923 n.24, 104 S.Ct. 3405 ("It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination."). In this case, the officials who sought the warrant include, at least, the FBI agent who submitted the warrant

application and the United States Attorney and Assistant U.S. Attorney who reviewed it.

Whether to invoke the exclusionary rule turns largely on "the flagrancy of the police misconduct." *See id*. at 911, 104 S.Ct. 3405; *see also Herring v. United States*, 555 U.S. 135, 143, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Courts ask whether law enforcement officials knew or should have known that their conduct was unconstitutional. *See Herring*, 555 U.S. at 143, 129 S.Ct. 695 (*citing Illinois v. Krull*, 480 U.S. 340, 348–49, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)).Their conduct is evaluated under an objective reasonableness standard: "whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances," including this "particular officer's knowledge and experience." *Id*. at 145, 129 S.Ct. 695 (quotation omitted). This standard "requires officers to have a reasonable knowledge of what the law prohibits." *Leon*, 468 U.S. at 919 n.20, 104 S.Ct. 3405. Therefore, the law enforcement officers should know about *Blake*. If law enforcement officials failed to heed the ruling in controlling precedent, they are not entitled to good faith. That is what happened here.

When the totality of the circumstances is considered, there is little doubt that a reasonable FBI agent and federal prosecutor should have known there was a problem. *See United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002)

(holding that courts "can look beyond the four corners of the affidavit and search warrant to determine whether" the good faith exception applies). Specifically, the government's own conduct screams that the law enforcement officers did not act in good faith: 1) according to the government, the agent apparently told Google when he served the warrant of a date limitation; 2) the government does not defend the search warrant on the merits; 3) the government scurries to another magistrate judge to get a duplicate email search warrant but this time with a date limitation. These subsequent actions are telling evidence of the government's recognition of its earlier failure. In other words, under the circumstances of the case, the law enforcement officers had information with which he could have provided further clarity in the search warrant.

Post-*Blake*, the law in the Eleventh Circuit is clear. Email search warrants need to have a temporal limitation. It is unlikely that the experienced law enforcement agent here ever previously sought a search warrant without a temporal limitation. The US Attorney's Office and the FBI are regularly trained on Fourth Amendment law. Both were aware that *Blake* represented a change in the law and required a date restriction. Therefore, the warrant here was so facially deficient because it failed to have any time limitation that any reasonable law enforcement officer would know that it was insufficient and lacked probable cause. Bottom line:

it is objectively unreasonable for law enforcement to believe that an email search warrant without a temporal limitation meets the particularity requirement of the Fourth Amendment.

Dated: December 10, 2019

/s/ William H. Thomas Jr.
William H. Thomas, Jr.
The W.H. Thomas Firm, LLC
Georgia Bar No. # 706610
511 East Paces Ferry Road
Atlanta, GA 30305
bill@whthomasfirm.com
(404) 897-3523 (office)
(678) 965-1781 (fax)

/s/ Douglas Chalmers Jr.
Douglas Chalmers, Jr.
Chalmers & Adams, LLC
Georgia Bar No. 118742
5805 State Bridge Rd. #G77
Johns Creek, GA 30097
dchalmers@cpblawgroup.com
770-630-5927 (office)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. |
| | ) | 1:19-CR-184-MHC-JSA |
| JIM C. BECK | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record.

Dated: December 11, 2019.

/s/ William H. Thomas Jr.
William H. Thomas, Jr.
The W.H. Thomas Firm, LLC
Georgia Bar No. # 706610
511 East Paces Ferry Road
Atlanta, GA 30305
bill@whthomasfirm.com
(404) 897-3523 (office)
(678) 965-1781 (fax)
