IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA    :
                              :
      v.                :  CRIMINAL CASE NO.
                              :  1:19-CR-0184-MHC-JSA
JIM C. BECK                :

## REPORT AND RECOMMENDATION

Defendant Jim C. Beck is charged with wire fraud, mail fraud, money laundering, and aiding in the filing of false tax returns in a 43-count indictment. On April 25, 2019 and September 13, 2019, two Magistrate Judges of this Court issued warrants authorizing the search of Defendant's email account. Defendant moves to suppress the fruits of any search of his email account, arguing that the April 25 warrant was overbroad and insufficiently particularized and that the September 13 warrant was a fruit of that violation. For the reasons explained below, the Court **RECOMMENDS** that Defendant's Motions to Suppress [31][43] be **DENIED**.

## I.    BACKGROUND

On April 25, 2019, the government presented another U.S. Magistrate Judge with an application for a warrant authorizing the seizure and search of certain emails and information associated with jimcbeck@gmail.com, Defendant's email account. *See* Exh. 1 [31-1] at 6–7. In his affidavit in support of its application, FBI Special Agent Steve Dunn laid out what he considered to be a roughly five-year period of

illegal activity associated with the email account occurring from February 22, 2013 to June 15, 2018. *See id.* at 13. SA Dunn described a scheme in which Defendant allegedly prepared and submitted fraudulent invoices to the Georgia Underwriting Association, for which he served as General Manager of Operations. *Id.* at 12–23. According to SA Dunn, Defendant's email account likely contained communications evidencing Defendant's involvement in the scheme. *Id.* On this basis, the Judge approved the government's application and issued the requested warrant, which itself was prepared for her signature by the government. *Id.* at 2–5; First Resp. [36] at 3.

Although the government sought the warrant based on the alleged five-year period of illegal activity associated with Defendant's email account, the warrant itself required Google, LLC, the operator of Defendant's email account, to provide the government, *inter alia*, the "contents of all e-mails associated with the account," the "contents of all preserved data associated with the account," and "[a]ll records or other information stored at any time by an individual using the account" without any temporal limitation. Exh. 1 [31-1] at 3–5. The warrant then authorized the government to seize, from the data provided by Google, records related to financial transactions, business operations, emails to and from select individuals and associations, and contextual data related to Defendant's use of the account. *Id.* at 5. Although the warrant did not expressly contain any date limitation for the production

2

of emails, Google's online law enforcement portal contained a field that called for a defined time period; thus, SA Dunn limited his information request to records dated between January 1, 2013 and January 13, 2019. Tr. [64] at 12:5–6. Before the prosecution team was to access any records, a "filter team" comprised of FBI Special Agents Ashley Chavez and Amanda Lee and Assistant United States Attorney Angela Adams reviewed the records to remove any potentially privileged communications. Second Resp. [47] at 3.

On September 6, 2019, while the responsive records remained in the hands of the filter team, and before any access to the contents of any records by the prosecution team, Defendant moved to suppress the fruits of the April 25 warrant, arguing that the lack of temporal limitation in the warrant rendered it an unconstitutional general search. In response to Defendant's motion, and before the government sought a revised search warrant. On September 13, 2019, another Magistrate Judge issued a warrant substantially similar to the April 25 warrant, except that it required Google to provide the government only with responsive data dated between November 22, 2012 and September 15, 2018. *See* Warrant [36-1] at 1–7. The government applied for and received this second search warrant before the prosecution team had accessed any of the material produced by Google in response to the April 25 warrant. *See* Tr. [64] at 14:19–22, 15:16–20, 16:10–23, 17:23–18:7, 20:3–9, 21:21–22:4, 34:4–5.

On November 6, 2019, Defendant moved to suppress the fruits of both the April 25 and September 13 warrants on the grounds that the latter was obtained using fruits of the April 25 warrant, which he maintained was unconstitutionally broad. On February 13, 2020, the Court held an evidentiary hearing on Defendant's motions, at which Defendant's counsel examined SA Dunn on his execution of the April 25 warrant. At Defendant's request, the Court reopened the evidentiary hearing on July 8 to allow his counsel to continue their examination of SA Dunn. Defendant's motions are now ripe for adjudication.

## II.   DISCUSSION

### A.   *The April 25 Warrant*

Defendant argues that the April 25 warrant's omission of any temporal limitation on the data the government could obtain and search from his email account violates the Fourth Amendment to the United States Constitution. The government responds that the warrant nonetheless adequately limited the scope of its search and that even if it did not, the agents executing the search of Defendant's email account relied on the warrant in good faith.

#### 1.   Particularity and Probable Cause

The Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Two related, but distinct, principles follow: (1) The breadth of the searches and seizures authorized by the warrant must be supported by probable cause and (2) the warrant must particularly state what is sought. *See United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1351 (N.D. Ga. 2009). Thus, "the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." *Id.* (quoting *United States v. Maali*, 346 F. Supp. 2d 1226, 1239 (M.D. Fla. 2004)).

The amendment's particularity requirement is designed to prevent "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 479 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)); *see also United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017). A search conducted pursuant to a warrant that is insufficiently particularized is unconstitutional and evidence secured thereunder is subject to exclusion from a defendant's trial. *See Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); *Stone v. Powell*, 428 U.S. 465, 486 (1976); *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018). Whether a warrant is sufficiently particular in its description of the persons or things to be seized depends on whether it enables a searcher to reasonably ascertain and identify them. *See United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985).

Defendant argues that the "two-step" procedure outlined in the April 25 warrant, which mandates that Google provide the government all its data related to Defendant's email account before the government segregates and seizes relevant emails, is both unparticular and overbroad in violation of the Fourth Amendment. Defendant contends that because the warrant includes no temporal limitation to either the data Google was required to provide the government or what the government could seize from that data, it is, in effect, an unparticular general warrant that authorizes an indiscriminate search of his email account. Given the breadth of information stored in a personal email account, says Defendant, the warrant authorized the government to peruse substantial amounts of his personal information irrelevant to the government's investigation. Defendant states that the risk of an overbroad intrusion into irrelevant information is even higher where, as here, the government articulates no protocol as to the return or destruction of that data after its seizure of relevant information.

The government responds that the warrant provides limits to what it can search. The warrant limits the government to seizing only information related to the schemes SA Dunn detailed in his affidavit and other evidence related to the crimes of wire fraud and money laundering. According to the government, because SA Dunn stated in the affidavit that the scheme took place between 2013 and 2018, any

seizures of data from Defendant's email account would be necessarily limited to that general timeframe.

Nevertheless, despite arguing that the warrant is sufficiently particularized, the government's primary argument is broader: that, at a minimum, even if the language of the warrant was imperfect, suppression is not proper because the agent was entitled to rely in good faith on the validity of this duly-issued warrant. The Court will thus first discuss the good faith reliance doctrine before any further discussion as to the constitutionality of the April 13 warrant.

2.   Good Faith

That a warrant exceeds the bounds of the Fourth Amendment is not always grounds for excluding evidence. Under *United States v. Leon*, where officers have an objective basis to rely in good faith on a facially valid warrant, the evidence secured thereunder should not be suppressed even if the warrant ultimately turns out to be defective. *See* 468 U.S. 897, 922 (1984). Only in four specific situations is the good-faith exception inapplicable: (1) where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false; (2) where the judicial officer that issued the warrant "wholly abandoned his judicial role"; (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the

warrant issued is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.

"Good faith" is an objective standard determined by what a reasonable police officer under the circumstances would perceive, not what a judge or other legal expert would perceive. *See United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). The good-faith exception is applicable to reliance on warrants that are otherwise insufficiently particular, *see United States v. Accardo*, 749 F.2d 1477, 1479–81 (11th Cir. 1985), or overly broad, *see United States v. Travers*, 227 F.3d 1327, 1330 (11th Cir. 2000); *United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1355 (N.D. Ga. 2009). The government bears the burden to demonstrate the applicability of the *Leon* good-faith exception. *See United States v. Robinson*, 336 F.3d 1293, 1297–98 (11th Cir. 2003).

Citing the Eleventh Circuit's decision in *United States v. Blake*—issued more than a year prior to the April 25 warrant—Defendant argues the law was clear that a warrant seeking internet records must limit the seizure to a specific time period tied to the period of illegal activity. Defendant contends that the warrant's failure to include such a temporal limitation constitutes "flagrant behavior" that flouts *Blake*. First Mot. [31] at 17–20. As a result, Defendant states that the warrant was facially deficient and that reliance on it was objectively unreasonable.

In *Blake*, the government served Microsoft, which managed the defendant's Hotmail email account, with warrants seeking certain categories of emails related to sex trafficking charges. *See* 868 F.3d 960, 966 (11th Cir. 2017). The government separately served warrants on Facebook that "required disclosure . . . of virtually every kind of data that could be found in [the defendant's] social media account," including the defendant's private instant messages. *Id.* at 974. Regarding the Microsoft warrant, although the court noted that it was "somewhat troubling" that it was not temporally limited to the time period of the alleged conspiracy, the court found that it was nonetheless constitutional in its scope because "it sought only discrete categories of emails that were connected to the alleged crimes." *Id.* at 973 n.7. The court cast doubt on the constitutionality of the much broader "two-step" Facebook warrants, however, specifically noting that "the warrants should have requested data only from the period of time during which [the defendant] was suspected of taking part in" illegal activity. *Id.* Such a specification, the court stated, would have put to rest any claim that the warrants "were the internet-era version of a 'general warrant'" *Id.* (internal citations omitted). Nevertheless, the court stopped short of finding that the Facebook warrant was unconstitutionally broad because, in any case, the government relied on it in good faith. *See id.* at 974–75. According to the court, "while the warrants *may* have violated the particularity requirement," the mere lack of temporal limitation did not render them facially unreliable at least based

on the state of the law. *Id.* (emphasis added). The court thus found that neither warrant's lack of temporal limitation was necessarily fatal to its constitutionality, only suggesting in *dicta* that the inclusion of such a facial limitation could function as a safe-harbor provision for an otherwise broad warrant seeking internet records. *See United States v. Matter of Search of Info. Associated With Fifteen Email Addresses*, No. 2:17-CM-3152-WC, 2017 WL 4322826, at *6 (M.D. Ala. Sept. 28, 2017) (noting that "the [*Blake*] court's dicta cast doubt on the validity of the [Facebook] search").

The Court has doubts that the April 25 warrant itself would pass muster under these standards. The warrant called for Google to produce to the government all emails with essentially no other restriction, and then allowed the government to review all of those emails and retain anything that might constitute evidence of the crimes, with only non-inclusive examples of specific categories of responsive documents as guidance. This language is far broader than that in the Microsoft warrant that the Eleventh Circuit "somewhat troubling" in *Blake*, and essentially the same as that in the Facebook warrant which the Eleventh Circuit heavily criticized, and all but stated was overbroad. While the Eleventh Circuit stopped short of formally declaring a Fourth Amendment violation, it stated that "the warrants should have requested data only from the period of time during which [the defendant] was suspected of taking part in the prostitution conspiracy." *Blake*, 868 F.3d at 974. The

April 25 warrant requested and relied upon by the government here did not limit the materials to be obtained or reviewed in such a fashion. At a minimum, the government was on thin ice vis-à-vis this warrant after *Blake*.

SA Dunn testified that he believed a date restriction was essentially included in the information that he provided in the supporting affidavit, which information demonstrated a specific date range for Defendant's use of the email account from the beginning of 2013. Tr. [64] at 10:15–24. Consistent with this date restriction contained within the affidavit, SA Dunn only asked for and only received data from Google beginning on January 1, 2013. *Id.* at 12:3–6.

The Court is reluctant to recommend upholding the warrant, and denying Defendant's motion, on this basis. The Supreme Court in *Groh v. Ramirez* reaffirmed that the "Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." 540 U.S. 551, 557 (2004). While courts have construed warrants with reference to information contained within the supporting affidavits, that is generally where the warrant attaches or incorporates the supporting document. *Id.* at 557–58. The government here does not argue that the April 13 could be construed as incorporating an unstated temporal limitation based on the chronology of facts outlined in the affidavit. Similarly, statements by an officer unilaterally limiting the scope of an otherwise facially overbroad warrant— such as SA Dunn's request to Google only for documents after January 2013—do

not by themselves satisfy the Fourth Amendment's requirement for a particularized warrant issued by a judicial officer. *Id*.

The Court at a minimum reminds the government that warrants to third party providers of email or social media records should include meaningful limitations on the data to be provided and reviewed, which in many cases can be achieved through a temporal limitation. A difficult issue is presented as to whether the government could rely in good faith on this warrant. After all, even if the language is unparticular, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. Ultimately, this question is unnecessary to resolve here. The immediate issue whether to suppress the results of the April 25 warrant is moot, because the government has demonstrated that the prosecution team has not reviewed the results of that warrant, and the government has certified that it will not use—*i.e.*, will essentially self-suppress—this information in this case. First Resp. [36] at 6; *see* Tr. [64] at 14:19–22, 15:16–20, 16:10–23, 17:23–18:7, 20:3–9, 21:21–22:4, 34:4–5.   The Court can order the government to comply with these pledges, thus rendering a finding as to any Fourth Amendment violation moot.

Moreover, as discussed above, the government subsequently obtained a second warrant for the same email account (the September 13 warrant), which had a date restriction to which Defendant does not object. The Court finds, as explained

below, that the government's reliance on that warrant is not tainted by any arguable infirmity in the April 25 warrant and that there is therefore no basis to suppress the results of the second warrant.

B.     *The September 13 Warrant*

Defendant's only argument for suppression of the results of the September 13 warrant is based on the "fruit of the poisonous tree" doctrine, that is, that the September 13 warrant was a fruit of the allegedly unconstitutional April 25 warrant. *See Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990). Defendant does not argue that the September 13 warrant was itself infirm for lack of particularity or on any other basis.

The government's argument relies on the "independent source" doctrine, under which "evidence obtained from a lawful source that is independent of any Fourth Amendment violation is admissible. . . ." *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012) (citing *Murray v. United States*, 487 U.S. 533, 538 (1988)). In other words, the government argues that the September 13 warrant was independent of, and not a fruit of, the April 25 warrant, and that there is no basis to suppress the results of the properly particularized September 13 warrant.

Defendant makes a threshold argument that the independent source doctrine is solely applicable when a search pursuant to a warrant is preceded by an

unconstitutional *warrantless* action. But Defendant provides no authority stating this limitation. Rather, Defendant cites cases such as *United States v. Johnson*, in which the Second Circuit stated that "[c]ourts have applied the independent source exception in cases where the police stumble upon evidence while engaging in an unlawful search or entry . . . ." 994 F.2d 980, 987 (2d Cir. 1993). Merely stating that the doctrine has applied in warrantless entry cases, of course, does not mean that the doctrine is limited to such cases. Indeed, the Eleventh Circuit has broadly stated that the doctrine applies in cases that involve "an arguable violation of the Fourth Amendment." *United States v. Thomas*, 818 F.3d 1230, 1243 (11th Cir. 2016). The applicability of the independent source doctrine to this case squares with its fundamental purpose, which is to broadly prevent the government from being placed "in a worse position than they would have been in absent any error or violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984).

Refusing to apply the doctrine in this case because the initial search was conducted pursuant to a warrant, also, would disincentivize the government from taking the "preferred" course of seeking a warrant rather than making a warrantless search. *See United States v. Ventresca*, 380 U.S. 102, 105–06 (1965). It would be perverse, in other words, to allow application of the doctrine based on searches that entirely flout the warrant requirement altogether, but deny application in cases, like here, where the government obtained a warrant with wording that is arguably too

14

vague. The latter is far less problematic and should not meet with a harsher application of the independent source doctrine.

Thus, the government is entitled to seek application of the independent source rule here. This requires two showings. *See Thomas*, 818 F.3d at 1243; *Noriega*, 676 F.3d at 1260. "(1) [T]he warrant affidavit must establish probable cause independent of any information obtained during the initial illegal search, and (2) if the remaining information was sufficient to establish probable cause, the officers' decision to seek the warrant must not have been 'prompted by' what they saw during the illegal search." *United States v. Garcia*, 556 F. App'x 924, 925 (11th Cir. 2014) (citing *Noriega*, 676 F.3d at 1260–61).

As for the first prong of the analysis, Defendant broadly argues that because the April 25 warrant contained no express temporal limitations, nothing in the affidavit in support of the September 13 warrant can be excised from the results of the April 25 warrant. Defendant does not explain this argument, which fails to address how the data that Google provided in response to the April 25 warrant provided support for the probable cause affidavit submitted in support of the September 13 warrant. A reading of SA Dunn's two affidavits shows otherwise. In his affidavit in support of the September 13 warrant, SA Dunn makes no mention of any of the contents of the emails Google provided in response to the April 25 warrant and, only after detailing probable cause for the new warrant, states that Google had

in fact provided some unreviewed response to the original warrant. *See* Second Aff. [43-1] at 37–39. The "Probable Cause" section of SA Dunn's affidavit is nearly identical to the affidavit submitted in support of the April 25 warrant. *See* First Aff. [31-1] at 12–23; Second Aff. [43-1] at 21–37. In other words, the government sought and received the September 13 warrant on the same set of facts as it did the April 25 warrant. And Defendant does not challenge those facts as insufficient to create probable cause to search at least some of his emails.

That leaves the question of whether the government's decision to seek the September 13 warrant was prompted by the results of its execution of the April 25 warrant. The government argues that this could not be the case because the prosecution team learned next to nothing from Google's response to SA Dunn's service of the April 25 warrant; while Google provided a response, the government adduced evidence that neither the affiant (SA Dunn) nor any member of the prosecution team had reviewed that information and they were unaware of the contents of Google's response before seeking the September 13 warrant. *See* Tr. [64] at 14:19–22, 15:16–20, 16:10–23, 17:23–18:7, 20:3–9, 21:21–22:4, 34:4–5.

Defendant does not dispute that SA Dunn and the rest of the prosecution team were unaware of the contents of any of the information previously supplied by Google, at the time of the September 13 warrant. Defendant instead points out that SA Dunn at least knew that Google had provided some requested information in

response to the April 25 warrant. *See* Aff. [43-1] at ¶ 60 ("Google produced the requested information on May 1, 2019 but I have not reviewed the information produced by Google."). Defendant also cites SA Dunn's acknowledgement that the government would not have sought the September 13 warrant had the service of the April 25 warrant revealed that no responsive information existed whatsoever. *See* Tr. [64] at 35:17–21. In other words, Defendant argues that, although the government had all of the same information leading to probable cause and was plainly motivated to seek a warrant before Google's May 1 response, and although the prosecution team had no knowledge of what Google actually produced, the mere fact that Google produced *something* necessarily taints any future legal process to obtain that data. The Court cannot agree with this application of the fruit-of-the-poisonous-tree doctrine.

The government was clearly not prompted to seek a warrant based on the mere fact that Google previously produced some unknown material related to Defendant's email account. That Google produced *something* in response to the original warrant at most only confirmed a small part of what the government already knew or had probable cause to believe, that is, that this email account existed and was likely to contain *some* information. It remains that SA Dunn and the remainder of the prosecution team knew nothing more on September 13 than they did on April 25 about what information was contained in that email account, whether any records

still existed from the relevant timeframe of the September 13 warrant,[1] and whether any emails relating in any way to the case existed at all.

Indeed, there is no question that the government was motivated to and would have sought a warrant for the email account without necessarily knowing that some responsive data still existed. The government did exactly that—*i.e.*, it sought such a warrant—before any response from Google at all.

The Eleventh Circuit's decision in *United States v. Chaves,* 169 F.3d 687 (11th Cir. 1999), is instructive. In that case, officers had probable cause to believe that boxes containing cocaine, and other evidence, were present inside a warehouse, based on information from a confidential informant. *Id.* at 689. The officers then conducted a purported protective sweep of the warehouse, without a warrant, observed the boxes described by the confidential informant, and only then formally obtained and executed a search warrant for the warehouse. *Id.* The Eleventh Circuit found that the initial protective sweep was unsupported and illegal. *Id.* at 691. But the court denied suppression as to the fruits of the later search, because the search

---

[1] The September 13 warrant called for production of emails only through September 15, 2018, whereas SA Dunn in serving the April 25 warrant requested that Google produce materials up through January 13, 2019. Because SA Dunn was unaware of the contents of any of the material produced by Google in response to the April 25 warrant, he necessarily did not know if this material contained anything dating back to September 2018 or if, rather, the account only held more recent data that would not be within the scope of the September 13 warrant.

warrant was supported and prompted by independent information learned prior to the protective sweep. *Id.* at 693; *see also United States v. Harling*, 705 F. App'x 911, 916–18 (11th Cir. 2017) (*per curiam*) (finding that officers' decision to seek a warrant to search the contents of USB drives was not prompted by a prior warrantless search of the drives' contents because the warrantless search only "confirm[ed] the veracity" of probable cause they already had).

Notably, the Eleventh Circuit in *Chaves* denied suppression, notwithstanding that the officers in that case made no efforts to secure a warrant until after the illegal protective sweep. And the officers learned information in the protective sweep that necessarily cemented or strengthened the probable cause they already had established, that is, that the boxes described by the confidential informant as containing cocaine were definitively present. Similarly, in *Harling*, although officers already had probable cause to believe that computer drives contained child pornography, a detective conducted "a limited forensic preview to *confirm the presence of child pornography*" before applying for a warrant. 705 F. App'x at 914 (emphasis added). Yet despite this prior warrantless substantive review of the material, the Court of Appeals denied suppression because this information only served to confirm probable cause already known, and therefore would not have been the motivating factor for the government to seek a warrant. *Id*. at 916–18.

If anything, the facts at bar more strongly support application of the independent source doctrine. In this case, by contrast to *Chaves* and *Harling*, the government clearly demonstrated its motivation to obtain a warrant prior to receiving the allegedly tainted production. And the government learned nothing of substance from that production. Far from the facts in those cases—in which officers actually *confirmed the presence* of illegal material or containers containing illegal material—the prosecution team here learned nothing about the contents of Defendant's emails or whether any data existed during the relevant time period of the September 13 warrant. Indeed, all that happened in this case is that the government sought to cure arguably deficient language in the first warrant, before the prosecution team intruded on the material at all. No purpose is served by applying the exclusionary rule to the second warrant.[2]

---

[2] Defendant relies on *United States v. Cioffi*, 668 F. Supp. 2d 385, 397–98 (E.D.N.Y. 2009). In that case, a district court invalidated a search warrant for an email account for lack of particularity, after officers had already obtained and reviewed all of the emails and other material produced, and found at least one incriminating email.   The government argued that suppression of the incriminating email should be denied on grounds of inevitable discovery because it could obtain a second more particularized warrant that would result in production of that email. *Id*. The district court in *Cioffi* declined to apply the inevitable discovery exception. This decision is not instructive here for several reasons. First, obviously, the Court is obliged to rely more on controlling published decisions, and even non-published guidance, from the Eleventh Circuit, than from a fellow district court outside this circuit. Second, the case is factually distinguishable because the agents in that case had already reviewed the fruits of the original illegal warrant and had even zeroed in on a specific incriminating document. *Cioffi* found this timing to be problematic: "Having seen

Thus, it is appropriate, on the facts of this case, to apply the independent source doctrine, and to deny suppression and application of the exclusionary rule to the September 13 warrant as a purported poisonous fruit. Thus, regardless of any infirmity in connection with the April 25 warrant, Defendant's Motion to Suppress the fruits of the September 13 warrant should be denied.

## III.   RECOMMENDATION

In reliance on the government's statements voluntarily relinquishing any review or use of the material produced in response to the April 25 warrant, the Court **RECOMMENDS** that the Court **ORDER** that the government destroy if practicable, or otherwise continue to segregate from the prosecution team's access, any material produced by Google in response to the April 25 warrant, and any filter team work product or notes or other derivative material, that relate to time periods not allowed for in the September 13 warrant. With this Order and the government's

---

the November 23rd Email, the government is now in a position to obtain a warrant with perfect particularity." *Id*. at 398. Here, by contrast, SA Dunn and the other members of the prosecution team knew nothing about the contents of Defendant's email account when they obtained the second warrant. Third, the case at bar implicates the independent source doctrine, which although similar, is not the same as the inevitable discovery doctrine, which was at issue in *Cioffi*. Independent source involves an inquiry into the government's motives and intent for investigative steps that it has already taken. Inevitable discovery requires an additional layer of speculation, that is, it asks a court to predict what inchoate investigative actions the police may have hypothetically taken absent the violation. *Cioffi* is not helpful to the Court's analysis for all of these reasons.

certifications that it will not use or access this information, the Court **RECOMMENDS** that Defendant's Motion to Suppress the April 25 warrant [31] be **DENIED** as moot. Further, the Defendant's Motion to Suppress the September 13 warrant [43] should be **DENIED** on the basis of independent source.

**IT IS SO RECOMMENDED** this 30th day of July, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE