IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM C. BECK,<br><br>Defendant. | CRIMINAL ACTION FILE<br><br>NO. 1:19-CR-184-MHC-JSA |

## ORDER

This action comes before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Justin S. Anand [Doc. 73] recommending that Defendant's Motion to Suppress Evidence and Fruits Seized Pursuant to the Search Warrant Directed to Google ("First Mot. to Suppress") [Doc. 31] and Second Motion to Suppress the "New" Email Search Warrant ("Second Mot. to Suppress") [Doc. 43] be denied. The Order for Service of the R&R [Doc. 74] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. After receiving an extension of time to file his objections [Doc. 76], Defendant filed his "Objections to the Report and Recommendation Denying Motions to Suppress First and Second Search Warrants ("Def.'s Objs.") [Doc. 79].

## I.   LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. PROCEDURAL HISTORY

An indictment initially was returned against Defendant on February 14, 2019. Criminal Indictment [Doc. 1]. Defendant has been charged in a Superseding Indictment with twelve counts of wire fraud in violation of 18 U.S.C. § 1343, thirteen counts of mail fraud in violation of 18 U.S.C. § 1341, fourteen counts of money laundering in violation of 18 U.S.C. § 1957, and four counts of aiding in the filing of a false tax return in violation of 26 U.S.C. § 7206(2). Superseding Criminal Indictment [Doc. 22].

On April 25, 2019, prior to the original indictment in this case, the Government sought a warrant to search information associated with the email address jimcbeck@gmail.com. Application & Aff. for Search Warrant (filed Apr. 25, 2019) [Doc. 31-1] at 6-7. The affidavit attached to the warrant application was completed by Steven T. Dunn ("Dunn"), Special Agent with the Federal Bureau of Investigation ("FBI"), who described alleged illegal activity associated with the email account from as early as February 22, 2013, until as late as June 15, 2018. Id. at 13. A United States Magistrate Judge issued the warrant on April 25, 2019, which required Google, Inc. to disclose to the Government, in pertinent part: the contents of all emails associated with the account; records or other information regarding the identification of the account; records or other information stored by

3

anyone using the account; records relating to financial information and business operations; and records and content relating to any communication from the subject email address and other accounts associated with specified persons or entities. Search Warrant ("April 25th Search Warrant") [Doc. 31-1] at 2-5. The April 25th Search Warrant itself did not contain any temporal limitation for the production of e-mails.[1]

When Dunn executed the April 25th Search Warrant, he logged into Google's web portal and completed the required fields, which included a date range from January 1, 2013, through January 13, 2019. Feb. 13, 2020, Hr'g Tr. ("Tr.") [Doc. 64] at 11-12. Google provided the information to Dunn in compliance with the April 25th Search Warrant electronically on May 1, 2019. Id. at 12-13. According to the Government, "[a]ll information produced by Google in response to the April 25, 2019 search warrant was submitted to FBI Special Agents Ashley Chavez and Amanda Lee in order for Agent Chavez and Agent Lee to review the materials and filter out any potentially privileged communications."

---

[1] When Dunn prepared Attachment B to his affidavit, which identified the "Particular things to be seized" (which also was attached to the April 25th Search Warrant), he omitted a date range or restriction, described by him as an "oversight." Tr. at 10.

Gov't's Resp. to Def.'s Mot. to Suppress Evid. and Fruits Seized Pursuant to the September 13, 2019 Search Warrant Directed to Google [Doc. 47] at 3. In addition, the Government represents that "no member of the prosecution team . . . has reviewed any of the information produced by Google as a result of the April 25, 2019 search warrant." Id. at 3-4; see also Tr. 14-16, 20-23 (testimony by Dunn that neither he nor any other FBI agent, member of the United States Attorney's office, or anyone else to Dunn's knowledge reviewed the content of the information produced in response to the April 25th Search Warrant prior to his subsequent application for a second search warrant).

On September 6, 2019, Defendant filed his First Motion to Suppress, contending that the April 25th Search Warrant was an unconstitutional general warrant that had no date restrictions. First Mot. to Suppress at 13. After this motion was filed, Dunn submitted an application for a second search warrant, "[e]ssentially, due to the fact that the attachment B and [April 25th] search warrant [ ] did not specify a date range." Tr. at 17. On September 13, 2019, another Magistrate Judge issued a search warrant substantially similar to the April 25th Search Warrant, except for the specific requirement that the information be produced "for the time period from November 22, 2012 to September 15, 2018." Search Warrant ("September 13th Search Warrant") [Doc. 43-1].

5

On November 6, 2019, Defendant filed his Second Motion to Suppress, contending that the April 25th Search Warrant was unconstitutionally overbroad and the September 13th Search Warrant was based on the fruits of the earlier unlawful search. Second Mot. to Suppress at 4-8. In response to the Second Motion to Suppress, the Government stated as follows:

> The information produced by Google in response to the second search warrant has been submitted to new filter agents. These agents, FBI Special Agents Paul Costa and Greg Rice, are currently reviewing the information produced by Google and are filtering out any potentially privileged communications. This filter review is supervised by AUSA Angela Adams. The prosecution team will not review this information until all potentially privileged communications have been removed.
>
> The prosecution team has no plans to ever review or in any way utilize the information provided by Google in response to the challenged April 25, 2019 search warrant. Therefore, there will be no evidence to suppress with regard to the April 25, 2019 search warrant.

Gov't's Resp. to Def.'s Second Mot. to Suppress [Doc. 47] at 5-6.

On July 30, 2020, Judge Anand issued his R&R. With respect to the April 25th Search Warrant, Judge Anand calls into question the validity of the warrant but recommends that the First Motion to Suppress be denied as moot "because the government has demonstrated that the prosecution team has not reviewed the results of that warrant, and the government has certified that it will not use—*i.e.*, will essentially self-suppress—this information in this case." R&R at 10-12. With respect to the September 13th Search Warrant, Judge Anand points out that

6

"Defendant does not dispute that SA Dunn and the rest of the prosecution team were unaware of the contents of any of the information previously supplied by Google, at the time of the September 13 warrant." R&R at 16. Judge Anand then rejects Defendant's assertion that the fact that the prosecution team had knowledge that Google had produced "some" requested information in response to the April 25th Search Warrant (even though they had no knowledge of any of the specific information produced) taints any future legal process to obtain that specific information. Id. at 17. Regardless of any infirmity in connection with the issuance of the April 25th Search Warrant, Judge Anand concludes that it is appropriate to apply the independent source doctrine and deny suppression of the information provided by Google in response to the September 13th Search Warrant. Id. at 17-21.

### III.   DEFENDANT'S OBJECTIONS

#### A.   The April 25th Search Warrant

Defendant takes exception to Judge Anand questioning the validity of the April 25th Search Warrant but failing to recommend that Defendant's First Motion to Suppress be granted because the warrant imposed no temporal limitation and is not "saved" by application of the good faith reliance doctrine. Def.'s Objs. at 5-13. However, Defendant does not dispute that the prosecution team, which has no

7

knowledge of the specific information produced in response to the April 25th Search Warrant, has agreed not to use any of that information in this case. Consequently, it is unnecessary to grant Defendant's First Motion to Suppress because there is no longer any information to suppress with respect to the production made by Google in response to the April 25th Search Warrant. Courts in this district have held that where the Government agrees not to introduce any evidence from a challenged search, a motion to suppress such evidence becomes moot. See United States v. Brounson, No. 1:15-CR-00366-ELR-JFK, 2016 WL 4472971, at *1 (N.D. Ga. Aug. 23, 2016) (denying as moot the defendant's motion to suppress based on the government's agreement not to use the challenged statements); United States v. Harris, 1:14-CV-251-AT-JSA, 2015 WL 13850000, at *7 (N.D. Ga. May 29, 2015) (denying motion to suppress as moot where "the Government has vowed to self-suppress the allegedly offending [ ] calls, [so] the Defendants have received the only relief they would be entitled to."); United States v. Bryson, No. 1:13-CR-09-ODE-GGB, 2013 WL 5739055, at *11 (N.D. Ga. Oct. 21, 2013) (denying the defendant's motion to suppress statements as moot where the government agrees not to use the statements in its case-in-chief); United States v. Dixon, No. 1:12-CR-205-ODE-ECS, 2013 WL 4718934, at *1 (N.D. Ga. September 3, 2013) (denying motion to suppress as moot due to the government's

announcement that it would not seek to introduce any evidence from a cell phone); United States v. Hughes, No. 2:08-CR-0019-RWS-SSC, 2008 WL 6653543, at *1 (N.D. Ga. Oct. 3, 2008), report and recommendation adopted, 2009 WL 2422850 (N.D. Ga. 2009), aff'd, 410 F. App'x. 285 (11th Cir. 2011) (denying suppression motion as moot upon the government's announcement that it did not intend to use evidence seized in search of the defendant's residence). Defendant's objection to Judge Anand's recommendation that his first motion to suppress be denied as moot is therefore **OVERRULED**.

    **B.**    **September 13, 2019 Search Warrant**

Defendant objects to the R&R's reliance on the independent source doctrine to justify the recommendation to deny Defendant's Second Motion to Suppress. Def.'s Objs. at 14. Defendant contends that, contrary to Judge Anand's finding, the September 13th Search Warrant was not independent of the April 25th Search Warrant and to apply the doctrine would encourage law enforcement officers to obtain evidence in an illegal manner. Id. at 14-17. Even if the independent source doctrine is applied, Defendant contends that the September 13th Search Warrant is still invalid because the first warrant was defective for failing to have a temporal limitation and Dunn was prompted to seek a second warrant by what he learned from the initial illegal search. Id. at 19-25.

9

"The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." United States v. Maxi, 886 F.3d 1318, 1329 (11th Cir. 2018) (quoting Nix v. Williams, 467 U.S. 431, 443 (1984)). The Eleventh Circuit analyzes whether an independent source exists to support a search warrant in two steps:

> First, we excise from the search warrant affidavit any information gained through the arguably illegal initial search and determine whether the remaining information is enough to support a probable cause finding. Second, if the remaining information establishes probable cause, we determine whether the officer's decision to seek the warrant was prompted by what he had seen during the arguably illegal search. If the officer would have sought the warrant even without the preceding illegal search, the evidence seized under the warrant is admissible.

Maxi, 886 F.3d at 1329-30 (quoting United States v. Bush, 727 F.3d 1308, 1316 (11th Cir. 2013) (per curiam) (quotations and citations omitted, alterations adopted). The rationale for the independent source doctrine is that the government should be put "in the same, not a worse, position tha[n] [it] would have been if no . . . error or misconduct had occurred." Murray v. United States, 487 U.S. 533, 537 (1988) (quoting Nix, 467 U.S. at 443)). Application of this two-step process shows that the evidence obtained in response to the September 13th Search Warrant is clearly admissible based upon the independent source doctrine.

First, assuming that the April 25th Search Warrant was illegally obtained, what information was included Dunn's application for the September 13th Search

Warrant that was gained through the arguably illegal earlier warrant? The answer is: none. This Court has compared in detail Dunn's affidavits in support of the April 25th Search Warrant and the September 13th Search Warrant and finds that the assertions supporting probable cause are nearly identical and no information obtained from the Google production in response to the April 25th Search Warrant was referenced in the application for the September 13th Search Warrant:

- The "Background" section of Dunn's affidavit in support of the April 25th Search Warrant [Doc. 31-1 at 12-14] is almost identical to the "Investigation" section of Dunn's affidavit in support of the September 13th Search Warrant [Doc. 43-1 at 21-23]. None of this information was obtained from the production in response to the April 25th Search Warrant.

- The "Additional Facts in Support of Probable Cause" sections of Dunn's affidavit in support of the April 25th Search Warrant [Doc. 31-1 at 14-20] and of Dunn's affidavit in support of the September 13th Search Warrant [Doc. 43-1 at 24-31] are identical. None of this

information was obtained from the production in response to the April 25th Search Warrant.[2]

- The "Google Records" section of Dunn's affidavit in support of the April 25th Search Warrant [Doc. 31-1 at 21-23] was reorganized into the "Background Concerning Email" section of Dunn's affidavit in support of the September 13th Search Warrant [Doc. 43-1 at 32-37] with some amplification. None of this information was obtained from the production in response to the April 25th Search Warrant.

- Dunn's affidavit in support of the September 13th Search Warrant contains a section entitled, "Disclosure of Previous Search Warrant" [Doc. 43-1 at 37-39]. This section details the facts that Dunn presented a similar affidavit to the Magistrate Judge on April 25, 2019, which was served on Google that same day and led to the production of information; that Dunn has not reviewed the information produced in response to the April 25th Search Warrant; that the response was submitted to FBI agents to filter out any potential privileged information; that filter agents did not complete

---

[2] In his objections, Defendant does not challenge these facts as insufficient to establish probable cause to search the e-mail account in question.

that initial review; that no member of the prosecution team was exposed to the information produced in response to the April 25th Search Warrant; that Defendant filed a motion to suppress the evidence produced in response to the April 25th Search Warrant because of the absence of any temporal limitation; and that the application for the September 13th Search Warrant contains such a temporal limitation.[3]  There is no information contained in this section of Dunn's affidavit that was derived from information produced by Google in response to the April 25th Search Warrant.

The next step of the analysis under the independent source doctrine is to determine whether the decision to seek the September 13th Search Warrant was prompted by any information obtained as a result of the execution of the April 25th Search Warrant.  Defendant does not dispute the Government's representation that neither Dunn nor the rest of the prosecution team were aware of the contents of Google's production in response to the earlier search warrant.  Instead, Defendant asserts that Dunn became aware that Google had e-mails that were produced in

---

[3] Unlike the application for the April 25th Search Warrant, in the "Information to be seized by the government" section of the application for the September 13th Search Warrant, Dunn sought information for the period from November 22, 2012 to September 15, 2018. [Doc. 43-1 at 15.]

13

response to the April 25th Search Warrant and this knowledge somehow prompted his decision to apply for the second warrant. Def.'s Objs. at 17-25.

This Court's agrees with the Magistrate Judge that the mere fact that Google responded to the April 25th Search Warrant by producing some information did not prompt Dunn to apply for the September 13th Search Warrant. R&R at 17-18. The evidence shows that Dunn applied for the second search warrant in response to Defendant's motion to suppress information obtained from the first search warrant because the first warrant failed to contain a temporal limitation. Tr. at 17. As stated above, there was no additional information sought in the application for the second search warrant. At the time Dunn made his application for the second warrant, he knew that "some" information had been produced by Google in response to the first search warrant. But this knowledge did not prompt any conduct by Dunn because, based on his experience, he knew prior to the execution of the first search warrant there would be responsive information produced by Google from Defendant's email account. See Tr. at 35 ("I've never executed a search warrant for emails that were nonresponsive." [sic]). The fact that Google produced some information in response to the April 25th Search warrant did not prompt Dunn to apply for the second warrant; the motivation in fact was the failure of the first warrant to include a temporal restriction.

14

Defendant cites United States v. Cioffi, 668 F. Supp. 2d 385 (E.D.N.Y. 2009) to support its position that the independent source doctrine should not apply to deny suppression of the September 13th Search Warrant as a "poisonous fruit" of the April 25th Search Warrant. Def.'s Objs. at 22-24. In Cioffi, the district court found that a search warrant for a defendant's personal email account was defective for failing to limit the items to be seized to emails containing evidence of the crimes charged in the indictment. Cioffi, 668 F. Supp. 2d at 396. Unlike in this case, members of the prosecution team obtained a copy of the account from Google, "searched the account" and, during an "initial look," reviewed a lengthy email from the defendant. Id. at 389. The government invoked the "inevitable discovery" doctrine, under which "unlawfully seized evidence is not suppressed if 'the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" Id. at 397 (quoting Nix, 467 U.S. at 444)). But the problem in Cioffi was that the government's review of the defendant's email impacted the government's ability to obtain a warrant with precision: "[T]he government's timing still presents a problem: Having seen the November 23rd Email, the government is now in a position to obtain a warrant with perfect particularity. There is, in other

15

words, no way to purge the taint of its unconstitutionally overbroad search." Id. at 398.

Cioffi's facts are clearly distinguishable from the facts in this case. Aside from the fact that there are requirements for the inevitable discovery doctrine to apply that are not present for the application of the independent source doctrine,[4] here, the prosecution did not review any of the emails from Defendant's Google account prior to obtaining the September 13th Search Warrant. Because Dunn and the prosecution team were unaware of the contents of Google's response to the April 25th Search Warrant, there was no ability to alter the application for the second warrant to better particularize the information sought in Defendant's email account. In fact, Dunn's application for the second warrant contained no additional information to support probable cause.

---

[4] For the inevitable discovery doctrine to apply in this circuit, not only does the government have to establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, but the prosecution also must show that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007) (emphasis and citation omitted). See also Murray, 487 U.S. at 539 ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.").

This Court does not share Defendant's view that "judicial sanctioning of the [independent source] doctrine in this case would also encourage incomplete investigations in the hope that information subsequently discovered would cure a defective warrant." Def's Objs. at 17. If Dunn or the prosecutors in this case had reviewed the information obtained through the April 25th Search Warrant to bolster their probable cause to support or make more particular the information sought in the subsequent warrant, this Court would have been faced with an entirely different situation. If this Court accepted Defendant's position, then the failure to impose a temporal limitation in a search warrant would absolutely bar the government from ever seeking a second warrant regardless of whether the government became aware of the information produced as a part of the defective warrant. Such a holding would place government officials who have no knowledge of such information in a worse position than they would have been had no defect occurred, which is contrary to the purpose of the independent source doctrine. Murray, 487 U.S. at 537.

Therefore, Defendant's objection to Judge Anand's applying the independent source doctrine to deny suppression of the information received pursuant to the September 13th Search Warrant is **OVERRULED**.

## IV. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 79]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 75] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant's Motion to Suppress Evidence and Fruits Seized Pursuant to the Search Warrant Directed to Google [Doc. 31] and Second Motion to Suppress the "New" Email Search Warrant [Doc. 43] are **DENIED**.

**IT IS SO ORDERED** this 15th day of October, 2020.

_____
MARK H. COHEN
United States District Judge