IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM C. BECK | Criminal Action No.<br><br>1:19-cr-00184-MHC-JSA |

**Government's Consolidated Motion in Limine**

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and Brent Alan Gray and Sekret T. Sneed, Assistant United States Attorneys, for the Northern District of Georgia, hereby files this Consolidated Motion in Limine to exclude the following inadmissible and irrelevant evidence:

a. evidence of general good character and of specific instances of good conduct;

b. evidence that could promote jury nullification; and,

c. evidence of the penalties associated with the charged offenses.

In support of the Motions, the government states as follows:

**1. Introduction**

On May 14, 2019, a Grand Jury, sitting in the Northern District of Georgia, indicted the defendant, Jim C. Beck, in a 38-count indictment, alleging multiple counts of wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1957.  (Doc. 1). On August 14, 2019, a Grand Jury, sitting in the Northern District of Georgia, returned a superseding indictment, alleging multiple counts of wire fraud

1

violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, money laundering in violation of 18 U.S.C. § 1957 and aiding the filing of a false tax return in violation of 26 U.S.C. § 7206(2). (Doc. 22). The charges arise from an alleged embezzlement scheme perpetrated by Beck while he was the General Manager of Georgia Underwriting Association (GUA), which is an entity created by Georgia statute to provide high-risk property insurance to homeowners in Georgia. Specifically, the superseding indictment alleges that Beck, using family and friends as straw owners, created fictitious companies to bill GUA hundreds of thousands of dollars for work that had not actually been performed. Then, in his capacity as the General Manager of GUA, Beck approved the invoices for payment and caused the vast majority of the GUA funds to be transferred to entities named Creative Consultants and/or GA Christian Coalition that he controlled.

**2. The Court Should Exclude Inadmissible and Irrelevant Evidence**

The Constitution provides criminal defendants with the general right to present evidence and call witnesses in their own favor. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004); *see also* U.S. Const. amends V, VI. However, such rights are not absolute. *See Hurn*, 368 F.3d at 1365-66. Indeed, it "is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Anderson*, 872 F.2d 1508, 1519 (11th Cir. 1989). Accordingly, defendants are only constitutionally entitled to present evidence that is relevant to an element of the charged offense or to an affirmative defense. *See Hurn*, 368 F.3d at 1365-66;

*United States v. Masferrer*, 514 F.3d 1158, 1161 (11th Cir. 2008) ("where the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense. . . a defendant has no right to introduce that evidence") citing *Hurn*, 368 F.3d at 1365.

Under the Federal Rules of Evidence, evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("Relevant evidence is admissible," while "[i]rrelevant is not admissible"). Notably, even when evidence is relevant, courts may exclude that evidence, "if its probative value is subsequently outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).

**A. Motion to Exclude Evidence of the Defendant's General Good Character or of Specific Instances of Good Character.**

Beck should not be permitted to present evidence or argument regarding his alleged general good character or evidence of specific instances of good conduct. Under the Federal Rules of Evidence, a defendant may present character evidence via reputation or opinion testimony regarding lawfulness and often regarding truthfulness—and the prosecution is allowed to rebut the same. Fed. R. Evid. 405(a); *United States v. Reed*, 700 F.2d 638, 645 (11th Cir. 1983); *United*

3

*States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981 (Unit A)) (lawfulness is a pertinent trait in all criminal prosecutions). However, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). Consequently, when character is not an essential element of the offense, character evidence may only be presented through "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a), *accord United States v. Solomon*, 686 F.2d 863, 874 (11th Cir. 1982).

As it follows, a defendant may not provide evidence of possessing a generally good character. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly excluded proffered testimony "to portray [defendant as having] a good character"); *cf. Hewitt*, 634 F.2d at 280 (prevailing view is that Rule 404(a) precludes a defendant from offering reputation or opinion testimony regarding his "general good character").

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) ("specific acts of good character were inadmissible under [the] Rules"); *see Solomon*, 686 F.2d at 873-74 (court properly excluded evidence of defendant's military service and number of children as an improper attempt to interject specific instances of conduct); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) (court properly excluded evidence that

4

defendant did not overcharge in certain instances because such evidence is improper under Rule 405 as specific acts of good character); *see also United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("testimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)").

Based on these principles, Beck should not be permitted to introduce evidence that he possessed a generally "good" character – such as that he is religious, is a moral and ethical person, or is hard-working. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (evidence of "bravery, attention to duty, perhaps community spirit – were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010-11 (D. Md. 1985) ("patriotism" not relevant trait to charge).

Similarly, Beck should not be permitted to put on evidence of specific acts of good conduct – such as incidents: (a) of public service, charitable work, or church work/activities; (b) of honesty; (c) of the lack of prior bad acts; or (d) of any other specific instances of "good" conduct. *Ellisor*, 522 F.3d 1255, 1270; *see Camejo*, 929 F.2d at 613 ("proffered testimony was merely an attempt to portray the defendant as a good character through the use of 'prior good acts'"); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) (when defendant "attempted

5

to elicit testimony from witnesses regarding specific instances ... Each time, the district court correctly determined that although [defendant] was entitled to present character evidence, he could not do so by offering evidence of specific instances of his conduct"); *see also United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (defendant police officer's commendations properly excluded because they were neither "pertinent" nor probative of an essential element); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions"); see also Fed. R. Evid. 404(a); *cf. Barry*, 814 F.2d at 1404 ("letters of commendation were hearsay").

The Court, therefore, should exclude evidence of Beck's general good character and evidence of specific instances of good conduct.[1]

**B. Motion in Limine to Preclude Evidence and Argument Designed to Elicit Jury Nullification.**

The government moves to preclude the Defendant from attempting to introduce evidence or make arguments designed to induce jury nullification. Jury nullification occurs when the jury knowingly and deliberately rejects the evidence at trial or refuses to apply the law "either because the jury wants to send a message about some social issue that is larger than the case itself or

---

[1] The government may use certain financial records in its case-in-chief that include withdrawals/debits that may be construed as charitable contributions by Beck. The government would not object to references or testimony to such financial records.

because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *Black's Law Dictionary*, 2508 (8th ed. 2004).

Consistent with the requirement that only relevant evidence may be admitted at trial set forth above, federal courts have universally excluded evidence and arguments that encourage jury nullification. *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) (defendant's "jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("categorically reject[ing] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur") (citation and quotations omitted); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2d Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power ... A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification"); *United States v. Desmarais*, 938 F.2d 347, 350 (1st Cir. 1991) ("improper to urge the jury to nullify applicable law"); *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983) ("federal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed").

The Eleventh Circuit specifically stated:

> A jury has not (sic) more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (citing *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)); *see* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal), Basic Instruction No. 2.1 (2020) ("You must follow the law as I explain it – even if you do not agree with the law").

Accordingly, a "defense counsel may not argue jury nullification during closing argument." *Trujillo*, 714 F.2d at 105-06; *United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("defense counsel may not raise arguments that would encourage jury nullification"); *United States v. Hall*, 188 F. App'x 922, 925 (11th Cir. 2006) ("criminal defendant is not entitled to either an instruction or an argument for jury nullification"); *see United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (finding that jury nullification is "not to be positively sanctioned by instructions, but is to be viewed as an aberration under our system") (internal citation omitted).

Based on these principles, the government moves to preclude Beck from attempting to introduce evidence, engage in direct or cross-examination or to make arguments designed to encourage jury nullification. For example, the government moves to preclude evidence, examination or arguments related to:

(1) the statute at issue being unfair or unfairly applied in this case; (2) the consequences a conviction may have upon the Beck or Beck's family; (3) employment status, (4) sympathy, (5) religious beliefs, (6) charity/church work completed by the Defendant, and (7) family status. *See Funches*, 135 F. 3d at 1409 (no error when court denies admission of evidence that would support nullification, "even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant"); *United States v. Perez*, 459 F. App'x 191, 198 (3d Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification"); *United States v. Copeland*, 291 F. App'x 94, 97 (9th Cir. 2008) (evidence of defendant's childhood abuse excluded because "possible prejudice to the government of jury nullification based on sympathy"); *Wallace v. Davis*, 362 F.3d 914, 921 n.2 (7th Cir. 2004) (J. Williams, concurring) ("mitigation strategies which seek the 'equivalent of jury nullification' on the basis of religious beliefs are unreasonable"). In the end, such evidence is not relevant to the issues at trial, could promote jury nullification, and should be excluded.

### C. Motion in Limine to Preclude Evidence and Argument Related to any Potential Penalty.

The governments moves the Court to preclude the defense from attempting to introduce evidence or to argue about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well-settled that arguments or evidence regarding punishment are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512

U.S. 573, 579 (1994) (". . . a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'") (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict"). Indeed, the Eleventh Circuit has unequivocally approved an instruction to the jury that states "the question of punishment should never be considered by the jury in any way in deciding the case." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *accord* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal), Basic Instruction No. 10.2 (2020) ("You must never consider punishment in any way to decide whether the defendant is guilty. If you find the defendant guilty, the punishment is for the Judge alone to decide.")

This analysis applies equally to the collateral penalties associated with a felony conviction – such as being prohibited from certain types of employment and losing the rights to possess firearms and vote. *See United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment"); *United States v. Thigpen*, 4 F.3d 1573, 1578 (11th Cir. 1993) ("We ... hold that the general rule against informing jurors of the consequences of a verdict governs such cases"); *see also* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person ... who has been convicted [of a felony to] possess ... any firearm or ammunition").

The rationale for excluding penalty evidence is plain – the penalties associated with a conviction are not probative of guilt or innocence. Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See McDonald*, 935 F.2d at 1222.

As a result, the government moves to preclude Beck from arguing or introducing evidence regarding the potential penalties he faces upon conviction, including: (a) the maximum penalties associated with the charged offenses; (b) that if convicted, Beck could be sentenced to prison; (c) that Beck will be prohibited from obtaining certain types of jobs, including jobs in the Military, if convicted; and (d) that Beck will no longer be able to vote or possess a firearm if convicted. *See Rogers*, 422 U.S. at 40 ("the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed") (citations omitted).

//
//
//

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court grant each of its Motion in Limine in this consolidated motion.

Respectfully submitted,

KURT R. ERSKINE
    *Acting United States Attorney*


/s/BRENT ALAN GRAY
    *Assistant United States Attorney*
    Georgia Bar No. 155089
    brent.gray@usdoj.gov


/s/SEKRET T. SNEED
    *Assistant United States Attorney*
    Georgia Bar No. 252939
    sekret.sneed@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

June 11, 2021

/s/ SEKRET T. SNEED
SEKRET T. SNEED
*Assistant United States Attorney*