# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No.** |
| | ) | **1:19-CR-184** |
| **JIM C. BECK** | ) | |
| | ) | |

## DEFENDANT JIM BECK'S SENTENCING MEMORANDUM, INCLUDING OBJECTIONS TO THE PRE-SENTENECE REPORT

COMES NOW, the defendant, Jim C. Beck, and files this Sentencing Memorandum, including objections to the sentencing guideline calculation of the Presentence Report (PSR).

### Victim Impact

79. Restitution in the amount of **$2,865,271.94** is owed in this case and should be paid to the Clerk of Court for disbursement to the victims outlined below.  This officer recognizes the restitution amount owed to Cincinnati Insurance Company (the insured for GUA) is less than the loss incurred by GUA; however, this is the amount that was provided by the victim for restitution.

Cincinnati Insurance Company *(insured for GUA)*
c/o Elizabeth S. Carley
P.O. Box 145496
Cincinnati, OH 45250-5496
**Amount: $2,506,877.94**

Internal Revenue Service
IRS-RACS
Attn.:  Mail Stop, 6261 Restitution
333 W. Pershing Avenue

1

Kansas City, MO 64198
**Amount: $358,394**

PSR at ¶ 79.

The offense of conviction determines whether restitution is mandatory, discretionary, or even permissible. In this case, the Mandatory Victim Restitution Act (MVRA), 18 USC § 3663A, makes restitution mandatory for all title 18 offenses against property (including any offense committed by fraud or deceit). Thus, restitution is owed to Georgia Underwriting Association (GUA), and now its insurer, Cincinnati Insurance Company.[1] Restitution is not mandatory, however, for the non-title 18 offenses; here, the Title 26 offenses. *See United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998) (no restitution for title 26 tax offenses); *United States v. Dean,* 1995 WL 493006 (4th Cir. 1999), unpublished (no restitution for title 26 offense).

On May 11, 1996, a ValuJet commercial airliner crashed in the Florida Everglades, killing all 110 persons aboard. The company responsible for maintenance, SabreTech, Inc., was found guilty of a violation of 49 U.S.C. § 46312 for recklessly causing the transportation of hazardous material in air commerce, and of a violation of 49 U.S.C. § 5124, for willfully failing to train its employees in

---

[1] According to the PSR, GUA was paid by Cincinnati Insurance Company for the losses caused by the alleged embezzlement in this case. PSR at ¶ 79. The MVRA requires a court to order restitution to those who compensate a victim, such as insurers. 18 U.S.C. § 3664(j)(1).

accordance with applicable hazardous material regulations. The Eleventh Circuit reversed the conviction for the violation of section 46312, affirmed the conviction for the violation of section 5124, and remanded for resentencing, but noted that

> the district court cannot impose any restitution on SabreTech's conviction of [violating 42 U.S.C. § 5124] because 18 U.S.C. § 3663(a)(1)(A) allows restitution only upon convictions under 49 U.S.C. § 46312.

*United States v. Sabre Tech, Inc.*, 271 F.3d 1018, 1025 n. 7 (11th Cir. 2001).[2] *See also United States v. Abod,* 770 F.2d 1293 (5th Cir. 1985) (no restitution for fraudulent use of a credit card under 15 U.S.C. § 1644); *United States v. Elias,* 269 F.3d 1003, 1021 (9th Cir. 2001) (no restitution for title 42 environmental offenses); *United States v. Aguirre,* 926 F.2d 409 (5th Cir. 1991) (no restitution for equity skimming under 12 U.S.C. § 1709-2); *United States. v. Fore,* 169 F.3d 104, 109 (2d Cir. 1999) (no restitution to Social Security Administration for 42 U.S.C. § 408 offense).

This Court, nevertheless, likely has discretion to order restitution to the Internal Revenue Service for violation of the Title 26 offenses as a condition of release; however, it should not do so. Any amount of restitution ordered by the Court and paid by Mr. Beck would offset the actual tax loss caused by the alleged

---

[2] Upon resentencing, SabreTech was ordered to pay a $500,000 fine. *United States v. SabreTech, Inc.*, 2003 WL 22097005. The district court's fine was affirmed. *United States v. SabreTech, Inc.*, 2003 WL 1877127 (11th Cir. 2003).

embezzlement. *See* 26 U.S.C. § 162(f). In other words, Mr. Beck would be entitled to claim a deduction or an offset based on a restitution payment. This is a civil matter that is outside the scope of the criminal case. The IRS will demand a refund, including penalties and interest. Mr. Beck will seek to resolve that with the IRS perhaps by offer and compromise. The IRS is in the best position to calculate the amount of the tax due and owing, including any deduction for restitution payments made to Cincinnati Insurance Company.[3]

In addition, although restitution is due and owing to Cincinnati Insurance Company, the law is clear that restitution must be reduced by the value of the legitimate services rendered. *See United States v. Bane*, 720 F.3d 818, 827 (11th Cir. 2013). The trial record established, at a minimum, that Sonya McKaig and Steve McKaig provided legitimate services to GUA. *See* PSR ¶ 44 and 61. The government bears the burden of proof on determining the correct restitution amount, including any offset for the value of legitimate services rendered. *See United States v. Sheffield*, 939 F.3d 1274, 1278 (11th Cir. 2019). The amounts paid for those services

---

[3] Should the Court order restitution to the IRS, it would have to order it as a condition of release which means it would be only due and owing after Mr. Beck finishes his term of incarceration, should the Court order one. Further, this Court could not order interest to accrue on that part of the restitution amount until the period of release begins.

4

must be deducted from the restitution amount now owed to Cincinnati Insurance Co.[4]

The trial testimony and exhibits also established that other additional legitimate services were provided to GUA, including work performed by Margie Lane, Julee King and the use of Telemate through Paperless Solutions. Those amounts must also be deducted from the restitution amount identified in paragraph 79.[5]

## Offense Level Computation

86. **Adjustment for Obstruction of Justice:** Pursuant to U.S.S.G. §3C1.1, 2 levels are added since the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution of the instant offense of conviction by committing perjury at his trial. The defendant repeatedly made false statements about the businesses he utilized to commit this fraudulent scheme and where the GUA funds went after GUA paid the bogus invoices. The defendant maintained Paperless Solutions was a legitimate business created to improve GUA's "e-communication efforts." In reality, *Paperless Solutions* had no employees and existed only to produce fraudulent invoices, collect payment for fraudulent invoices, and redirect payments received to Beck through GA Christian Coalition. The defendant also testified he paid Jerry Jordan *"hundreds of thousands of dollars"* for the data mining software when the majority of the funds paid by GUA and ended up in Beck's accounts. Beck also testified that he only kept 10% of the money GUA paid, when in reality, Beck kept almost all the money

---

[4] Mr. Beck believes the proper amount for legitimate services rendered by Sonya McKaig and Steve McKaig is $237,203.56.

[5] Mr. Beck believes the proper amount of off-set for these services rendered is approximately $16,000.

generated through the fraudulent invoicing scheme. For these reasons, a 2-level enhancement is recommended. **+ 2**

The PSR imposes a two-level obstruction of justice enhancement--paragraphs 86, 92, and 100-- on Offense Group A, B and C, respectively. Mr. Beck objects to each of the obstruction enhancements.[6] This Court only imposes an obstruction of justice enhancement under circumstance where, after the defendant testifies at trial, the government takes on extra work by calling, for example, a rebuttal witness to rebut an aspect of the defendant's testimony. In *United States v. Greenhill*, 1:18-cr-00108-MHC (Cohen, J), this Court articulated its considered view on the obstruction enhancement for a defendant who exercises his constitutional and statutory right and testifies during trial in his own defense. This Court opined:

> I got a problem in applying an [obstruction of justice] increase for a defendant who chooses to go to trial and chooses to testify without the government presenting some evidence to me because of his testimony, they had to undertake additional action because of the obstruction of justice.

*United States v. Greenhill*, 1:18-cr-00108-MHC (Cohen, J) (Sentencing Hearing Transcript at 40, March 30, 2021). This Court further observed:

---

[6] Mr. Beck did not initially object to the obstruction enhancement in paragraph 86 but did so as to paragraphs 92 and 100. Mr. Beck now objects to paragraph 86 as well. Federal Rule of Criminal Procedure 32(i)(1)(D), provides that the district court "may for good cause, allow a party to make a new objection at any time before sentence is imposed." *Id.* 32(i)(1)(D). Mr. Beck alerted the government to his objection to paragraph 86 via email on September 20, 2021, three weeks before the sentencing.

> Not for something like this because I just think it's inappropriate for a defendant who decides to testify and put their story up to a jury and have the jury credit it or not, to have to face this unless, here's the unless, unless they obstruct justice to the extent that they put the government through some needless task.

Sentencing Transcript at 39.
.

    The PSR did not follow this Court's view of the obstruction enhancement.  The government did not go through any needless task, take any additional action, or put on any rebuttal evidence to refute, rebut or counter the defendant's testimony. Accordingly, under this Court's test the obstruction enhancements are not warranted.

    A defendant's decision to testify may be inhibited by a number of considerations, such as the possibility that damaging evidence not otherwise admissible will be admitted to impeach his credibility. These constraints arise solely from the fact that the defendant is quite properly treated like any other witness who testifies at trial. But the practice of imposing an obstruction enhancement under these circumstances places the defendant at a disadvantage, as compared with any other witness at trial, simply because he is the defendant. Other witnesses risk punishment for perjury only upon indictment and conviction in accord with the full protections of the Constitution. A rare occurrence indeed. Only the defendant himself, whose testimony is of critical importance to his defense, faces the additional risk that a jury guilty verdict will itself result in additional prison time. Enhancing the defendant's sentencing guideline offense level and allowing this Court to mete out additional

punishment to the defendant simply because of the Court's belief that the defendant did not testify truthfully at the trial should require more.

Further, this Court observed in *Greenhill* that should the defendant testify in his own defense, it is the jury's determination of the credibility of the defendant. An obstruction enhancement is unwarranted, this Court opined, even if the defendant is perceived to have obfuscated, misrepresented or fabricated the facts during his testimony.

> I mean, the government has the burden of proof to prove a defendant guilty beyond a reasonable doubt. The defendant, if he or she chooses to testify, I get it. You know, they may be obfuscating during their testimony. They may be misrepresenting. They may be telling a story that does not prove to be true.
>
> * * *
>
> I think the defendant has a right to testify and has the right to have the jury decide their credibility . . . I think this is the jury's determination. He's before me on sentencing, you know, and I just – I have said my piece about it.

*Greenhill,* Sentencing Transcript at 43-44.

Based on the Court's view, the obstruction enhancements imposed in the PSR do not apply to any of the Offense Grouping and should not be imposed at all. The defendant testified and the government did not have to put on additional evidence to rebut the defendant's testimony.

8

As to Offense Grouping A, the wire and mail fraud guideline calculation should be reduced to level 27 (70-87 months).[7]

*Group B - Money Laundering Conduct*

**88.Adjustment for Role in the Offense:** Pursuant to U.S.S.G. §3B1.3, **2** levels are added since the defendant abused a position of public or private trust that significantly facilitated the commission or concealment of the offense. The defendant abused his fiduciary duty and position of trust as General Manager of Operations at GUA. The defendant also abused his position of trust with his close friends and family member who believed that by forming companies, at Beck's request, that their businesses would be conducting legitimate business.      **+2**

**91.Adjustment for Obstruction of Justice:** Pursuant to U.S.S.G. §3C1.1, **2** levels are added since the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution of the instant offense of conviction by committing perjury at his trial. The defendant repeatedly made false statements about the businesses he utilized to commit this fraudulent scheme and where the GUA funds went after GUA paid the bogus invoices. The defendant maintained Paperless Solutions was a legitimate business created to improve GUA's "e-communication efforts." In reality, Paper[less] Solutions had no employees and existed only to produce fraudulent invoices, collect payment for fraudulent invoices, and redirect payments received to Beck through GA Christian Coalition. The defendant also testified he paid Jerry Jordan *"hundreds of thousands of dollars"* for the data mining software, when the majority of the funds paid by GUA ended up in Beck's accounts. Beck also testified he only kept 10% of the money GUA paid, when in reality, Beck kept almost all the money generated through the fraudulent invoicing scheme. For these reasons, a 2-level enhancement is recommended.

Mr. Beck objects to both the abuse of position of trust and obstruction of justice enhancements as applied to Offense Grouping B-money laundering counts.

---

[7] The objections to the obstruction enhancements imposed on Offense Groupings B and C should be sustained for the same reason as mentioned above. Other objections to the obstruction enhancements in Offense Groupings B and C will be made separately in response to those paragraphs of the PSR.

Both of these Chapter 3 adjustments, paragraphs 89 and 90, are misplaced and inconsistent with binding 11th Circuit case law

The money laundering Application Note informs the calculation of the offense level for money laundering. When considering the Chapter 3 adjustments courts are to consider only the money laundering offense itself and not the underlying crime that generated the money that was laundered. *See United States v. Salgado*, 745 F.3d 1135, 1139 (11th Cir. 2014) ("application note's meaning for this case is straightforward: When the district court calculated the defendant's offense level under § 2S1.1(a)(1), it could base a role enhancement on his conduct in the money laundering conspiracy but not on his conduct in the underlying drug conspiracy."). In this case, the PSR mistakenly considered the defendant's role in the underlying alleged wire and mail fraud scheme that generated the supposed dirty money. Similarly, the PSR did the same thing when evaluating the obstruction enhancement and did not exclusively look at the testimony about the money laundering offense. As a result, the defendant is receiving a higher adjusted offense level and guideline range than he should receive if the Application Note to § 2S1.1 is correctly followed. Those mistakes and the resulting miscalculations must, as Judge Carnes held in *Salgado,* be laundered out of the presentence report. *See Salgado*, 745 F.3d at 1135– 36.

## A.    Abuse of Position of Trust Enhancement

Initially, the PSR imposed the abuse of position of trust enhancement under the money laundering Offense Grouping because

> 91. Adjustment for Role in the Offense: Pursuant to U.S.S.G. §3B1.3, 2 levels are added since the defendant abused a position of public or private trust that significantly facilitated the commission or concealment of the offense. The defendant abused his fiduciary duty and position of trust as General Manager of Operations at GUA.

PSR at ¶91. After the defendant objected to this paragraph, the final PSR rejects the objection and repeats virtually the same conclusion without any analysis. The final PSR states in response:

> this officer maintains this 2-level enhancement is applicable in this case. The defendant's position as General Manager of Operations at GUA allowed Beck to continue and conceal the money laundering scheme.

Final PSR ¶ 91 (emphasis in the original).

Besides using generalized language, the PSR uses the identical conduct for the Chapter 3 adjustments for Wire and Mail fraud counts as it used for the money laundering counts. *Compare* ¶ 85 *with* ¶ 91. This is exactly what is not supposed to happen. Further, the Superseding Indictment charged the defendant with violations of 18 U.S.C. §1957, not §1956. Section 1957 is the "anti-spending" statute. A violation of 1957 is simpler to prove than a violation of section 1956 because it lacks

11

the additional scienter element of section 1956. Specifically, there is no requirement that the defendant intend to promote the specified unlawful activity, or have knowledge that the financial transaction is designed to conceal or disguise an attribute of the funds. Thus, simply spending fraud proceeds is a violation of section 1957, if the amount of criminally derived property in the transaction exceeded $10,000 and a financial institution is involved in the transaction. There was no evidence that the defendant concealed any of the 1957 money laundering transactions charged in the Superseding Indictment. Further, the defendant's position at GUA did not *significantly* facilitate the commission or concealment of the 1957 offense. Accordingly, the abuse of position of trust enhancement does not apply.

B.   **Obstruction of Justice**

The obstruction of justice guideline is a Chapter Three adjustment which provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Application Note 2(C) of §2S1.1 amends the obstruction guideline's nexus requirement and makes the enhancement permissible only if the

obstruction relates directly to the money laundering charges and not to the underlying offense. Application Note 2(C) states, in its entirety:

> Application of Chapter Three Adjustments. Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (*i.e.*, the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1 cmt. n. 2(C). *See Salgado*, 745 F.3d at 1139. In fact, when testifying at trial, the government when cross-examining the defendant went through the Superseding Indictment with respect to the money laundering transactions and the defendant did not dispute any of the facts supporting the underlying movement of the money (*i.e.*, the financial transaction over $10,000 that formed the basis for the § 1957 money laundering charges). Therefore, the Group B – Adjusted Offense Level (Subtotal) should be 26 not 30. Paragraph 94, Greater of the Adjusted Offense Levels Above: should be 27 from the Group A-Adjusted Offense Level.

Further, the final PSR's response to the defendant's objection is telling. The response says that "[t]he defendant's position as General Manager of Operations at GUA allowed Beck to **continue** and **conceal** the money laundering scheme." PSR at ¶91 (emphasis in original). The Superseding Indictment charges the defendant with 1957 money laundering—money spending—not 1956

13

promotional or concealment money laundering. As stated earlier, to prove the charges in the Superseding Indictment the government had to show that the defendant engaged in a financial transaction of over $10,000 using the proceeds of the specified unlawful activity. It does not require concealing the proceeds or promoting the specified unlawful activity.  The alleged obstruction of justice enhancement has to relate to the activity that forms the basis of the 1957 money laundering activity.

**93.Group B - Adjusted Offense Level (Subtotal):**                                      **30**

   The Adjusted Offense Level should be 26 not 30.

**94.Greater of the Adjusted Offense Levels Above:**                              **30**

   The greater of the Adjusted Offense Levels should be 27 not 30.

### Group C: Tax Conduct

**95.**Base Offense Level: The guideline for 26 U.S.C. §7206(2) offenses is found in USSG §2T1.4. Pursuant to U.S.S.G. §2T1.4(a)(1), the base offense level is determined based on the tax loss table found at §2T4.1. Thus, pursuant to U.S.S.G. §2T4.1(G), since the tax loss in this case is more than $250,000, the base offense level is 18. The tax loss in this case is $358,394.                                      18

**96.**Specific Offense Characteristics:  Pursuant to U.S.S.G. §2T1.4(b)(1), 2 levels are added if the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income. The aiding in the filing of false tax returns was part of a pattern or scheme, i.e., the wire and mail fraud scheme, from which the defendant derived a substantial portion his income. By creating false expenses and providing false information to his tax preparer for Creative Consultants and GA Christian Coalition, two fraudulent companies, the defendant gave the IRS the appearance that his businesses were legitimate.  This conduct allowed the defendant's underlying wire and mail fraud schemes to go undetected and flourish. This ultimately allowed Beck to derive a substantial portion of his income from fraud. For these reasons, a 2-level enhancement is recommended.                +2

14

Section 2T1.4(b)(1) provides for a two-level increase if the defendant

committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income or if the defendant was in the business of preparing or assisting in the preparation of tax returns.

The defendant objects to this 2-level adjustment.  The defendant was charged with violating 26 U.S.C. § 7206(2), which is the tax-preparer statute. Section 2T1.4 seeks to enhance the base offense level for conduct related to patterns and schemes committed by tax-preparers, not tax-payers who allegedly falsify their own income tax return. This is clear from the language of the relevant Background Section and Application Note to §2T1.4.

The Background section of § 2T1.4 states:

**Background**: An increased offense level is specified for those in the business of **preparing or assisting in the preparation of tax returns and those who make a business of promoting tax fraud** because their misconduct poses a greater risk of revenue loss and is more clearly willful.

U.S.S.G.  §2T1.4 (<u>Background</u>) (emphasis added). The defendant is not a tax-preparer or in the business of promoting tax schemes.

Application Note 2 reiterates the same sentiment and states:

Subsection (b)(1) has two prongs. The first prong (which the PSR applied here) applies to persons who derive a substantial portion of their income **through the promotion of tax schemes, *e.g.,* through promoting fraudulent tax shelters**.

15

U.S.S.G. § 2T1.4 Application Note 2 (emphasis added). The enhancements found in §2T4.1(b)(1) apply to tax preparers or those in the business of promoting tax schemes and not this defendant.

Section 2T1.4(b)(1) does not apply for another reason as well. That provision authorizes a two-level increase for tax fraud

> [i]f the defendant committed the offense as part of a pattern or scheme from which he derived **a substantial portion of his income**.

*Id.* (emphasis added). The Guidelines do not specify what constitutes a "substantial portion" of one's income. This Court must make that finding on its own. In other similar cases, sentencing courts borrowed the quasi-formula from the Guidelines' criminal livelihood provision. *See United States v. Welch*, 19 F.3d 192, 194–95 (5th Cir. 1994). Specifically, the criminal livelihood provision defines "engaged in as a livelihood" as:

> (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.,* the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

U.S.S.G. § 4B1.3 comment. (n. 2).

Using § 4B1.3 to determine whether the defendant derived a "substantial portion" of his income under § 2T1.4(b)(1) is proper because § 4B1.3 is intended to supplement the various specific offenses in Chapter 2 of the Guidelines, including § 2T1.4(b)(1). Congress directed the Sentencing Commission to specify a term of imprisonment for individuals who derive a substantial portion of their income through illegal activities. *See* 28 U.S.C. § 994(i)(2). Indeed, although § 2T1.4 does not specifically refer to § 4B1.3, the wording of each is nearly identical. Section 2T1.4 provides for a two-level increase "[i]f the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income." Section 4B1.3's commentary background states "[s]ection 4B1.3 implements 28 U.S.C. § 944(i)(2), which directs the Commission to ensure that the guidelines specify a 'term of imprisonment' for a defendant who committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income."[8]

If this Court uses §4B1.3 as a guide in applying §2T1.4 in this case, the PSR erred in finding that Mr. Beck received "a substantial portion" of his income by filing

---

[8] The courts have upheld the application of § 4B1.3 to other specific offenses, even though the specific offenses make no reference to the criminal livelihood provision. See, e.g., *United States v. Quertermous*, 946 F.2d 375, 377 (5th Cir.1991) (applying § 4B1.3 to § 2B1.1); *United States v. Cryer*, 925 F.2d 828, 829 (5th Cir.1991) (same). While the issue in *Quertermous* and *Cryer* was whether the criminal conduct satisfied § 4B1.3's minimum dollar amount, both cases nonetheless applied the provision to specific offenses. There is no material distinction between § 2T1.4 and the specific offense provisions that were at issue in *Quertermous* and *Cryer*.

fraudulent returns. The minimum amount of income lost by the victim satisfies the §4B1.3's minimum dollar requirement. However, it is undisputed that Mr. Beck was engaged in regular, legitimate employment as General Manager of GUA. It would certainly be error for this Court to find, as it would have to, that Mr. Beck's primary occupation was the filing of fraudulent tax returns, through which he gained a substantial portion of his income. This is yet another reason why 2T1.4(b)(1) does not apply. Accordingly, the correct offense guideline for Offense Grouping C is 18.

**97.**Specific Offense Characteristics:  Pursuant to U.S.S.G. §2T1.4(b)(2), 2 levels are added because the offense involved sophisticated means. The defendant created and used two false entities to conceal and hide income generated from the underlying wire and mail fraud schemes.  The defendant then created specific false business expenses for these companies to conceal the illegally obtained income and give the appearance to the IRS and his CPA that Creative Consultants and GA Christian Coalition were legitimate, operational businesses.  In addition to the normal categories of expenses on a Schedule C, which Beck also fabricated, he made up additional business expenses, such as, janitorial, postage, publications, telephone, internet fees, bank charges, security charges, outside services, printing, clerical fees, fuel, and web hosting fees to offset the income he had fraudulently generated.   For these reasons, a 2-level enhancement is recommended. +2

The defendant objects to paragraph 97. Jim Beck did not engage in sophisticated tax fraud. Under the definition of sophisticated means, the offense conduct must be "especially complex or especially intricate pertaining to the execution or concealment of the offense." U.S.S.G. §2T1.4, Application Note 3.

The guideline is clear: It is not enough for the means used in the tax fraud to be "complex" or "intricate"; rather, the means must be "especially" so. The

definition of "especially" includes "exceptionally" and "particularly." That is, the level of complexity or intricacy must set that particular tax fraud apart from ordinary tax fraud schemes, and even ordinarily complex or intricate schemes. *See United States v. Hulse*, 989 F.Supp.2d 1224, 1226–27 (M.D. Ala. 2013). Under this definition, this enhancement should not apply in this case. This alleged tax scheme was not sophisticated at all, let alone especially complex or intricate. To the contrary, it was as basic or ordinary a scheme as possible.

In support of the enhancement, the PSR states:

> The defendant created and used two false entities to conceal and hide income generated from the underlying wire and mail fraud schemes.

PSR at ¶ 97. This is untrue. The defendant did not hide or conceal from the IRS the income generated from the alleged scheme at all. In fact, Mr. Beck declared on his tax returns all the income of his two d/b/a's. Therefore, the basis for the enhancement is factually incorrect.

Mr. Beck deducted expenses on his tax returns without proper receipts to support those expenses. Or, even if the evidence showed that Mr. Beck made the deduction up out of whole cloth, such a tax fraud is basic and elemental, and is, almost by definition, not especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense. Therefore, the sophisticated means enhancement simply does not apply.

19

100. Adjustment for Obstruction of Justice: Pursuant to U.S.S.G. §3C1. 1, 2 levels are added since the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution of the instant offense of conviction by committing perjury at his trial. The defendant repeatedly made false statements about the businesses he utilized to commit this fraudulent scheme and where the GUA funds went after GUA paid the bogus invoices. The defendant maintained Paperless Solutions was a legitimate business created to improve GUA's "e-communication efforts." In reality, Paperless Solutions had no employees and existed only to produce fraudulent invoices, collect payment for fraudulent invoices, and redirect payments received to Beck through GA Christian Coalition. The defendant also testified he paid Jerry Jordan "hundreds of thousands of dollars" for the data mining software, when the majority of the funds paid by GUA ended up in Beck's accounts. Beck also testified he only kept 10% of the money GUA paid, when in reality, Beck kept almost all of the money generated through the fraudulent invoicing scheme. For these reasons, a 2-level enhancement is recommended **+2**.

The defendant objects to this obstruction of justice enhancement for the reasons previously stated. Applying the *Greenhill* obstruction analysis to Offense Grouping C means that the obstruction enhancement does not apply.

| | |
|---|---|
| 101.   Adjusted Offense Level (Subtotal): | 24 |
| **Adjusted Offense Level (Subtotal):** | **24** |

The Adjusted Offense Level for Group C should be a level 18.

### U.S.S.G. §3D1.3: Offense Level Applicable for the Grouping of Closely Related Counts

As noted above, Groups A and B are grouped pursuant to U.S.S.G. §3D1.2(c), as U.S.S.G. §2S1.1 embodies the fraud of U.S.S.G. §2B1.1.  Therefore, the offense level applicable is the offense level, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the group.  Since the money

laundering guidelines (Group B) yield the highest offense level, **30**, it will be used to calculate the Combined Offense Level pursuant to the rules of U.S.S.G. §3D1.4.

If properly applied, the Groups A and B, the highest offense level of the counts in the group is Wire Fraud and Mail Fraud (Group A) which corresponds to an offense level 29.

102.    **Multiple Count Adjustment:** Units are assigned pursuant to USSG §3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Counts | Adjusted Offense Level | Units |
|---|---|---|
| Groups A and B (Fraud and Money Laundering Conduct) | 30 | 1.0 |
| Group C (Tax Conduct) | 24 | 0.5 |
| **Total Number of Units:** | | 1.5 |

First, according to §3D2.1(d), §2T1.4 explicitly groups together with §2B1.1. Therefore, these sections should be grouped together, which computes to one grouping point, which adds only one additional unit, which translates into no additional offense levels. Second, even if the tax counts do not group with the other counts, when the guideline is properly calculated, the offense level for the tax counts (§2T1.4 (Group C)) is at least 9 offense levels below Groups A and B.

Consequently, the total number of units would be 1.0, which does not add any additional offense levels to the guideline calculation.

Further, under section 3D1.2(c), when the conduct underlying one count is a specific offense characteristic of another count, the counts must be grouped. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines. The conduct underlying Mr. Beck's tax offense convictions should be grouped with the offense level for wire and mail fraud. The PSR enhances the tax offense level 2-levels under section 2T1.4(b)(1) because the defendant committed the offense as part of a pattern or scheme (*i.e.,* this unreported income was derived from criminal activity, *i.e.,* the wire and mail fraud scheme. PSR ¶96. It is therefore indisputable that the wire and mail fraud counts "embodies conduct that is treated as a specific offense characteristic" of the tax counts. This Court is bound by the text of the applicable guideline, which provides explicitly that

> [c]ounts involve substantially the same harm within the meaning of this rule ... [w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in ... the guideline applicable to another of the counts.

U.S.S.G. § 3D1.2(c). This definition removes any doubt that Mr. Beck's wire and mail fraud and tax offenses must be grouped. This conclusion is reinforced by the Superseding Indictment which incorporates by reference into the tax offenses the

underlying wire and mail fraud scheme. *See* Doc. 22, Superseding Indictment at ¶ 33.

According to the PSR, the conduct underlying Mr. Beck's wire and mail fraud conviction is counted twice toward his sentence, once as the basis for his wire and mail fraud offense level and again as a specific offense characteristic of the aiding and assisting in the filing of false tax return. This double-counting in the PSR actually seeks to lengthened Mr. Beck's sentence. The purpose of section 3D1.2(c) is to prevent precisely this sort of "'double counting' of offense behavior." U.S.S.G. § 3D1.2, Commentary, Application Note 5.

In *United States v. Doxie*, 813 F.3d 1340, 1346 (11th Cir. 2016), the Eleventh Circuit held that fraud and filing false tax return offenses (26 U.S.C. § 7201(1)) should not group. The Court reasoned that the fraud counts were not embodied by conduct treated as a specific offense characteristic under the 2T1.1 guideline for filing false tax returns. Further, the Court held that the filing of false tax return offenses and the fraud claims were not closely related. Here, the government clearly believes that the charged tax offenses are interrelated to the underlying fraud claims. As previously stated, the Superseding Indictment incorporates by reference the underlying fraud scheme in the tax counts. *See* Doc. 22, Superseding Indictment at ¶ 33. Here, Mr. Beck was convicted of a different crime than Doxie--26 U.S.C. § 7206(2). There is no question that the PSR increases the base offense 2-levels

because the offense characteristic in §2T.1.4(b)(1) specifically increases for the underlying wire and mail fraud offense. A proper application of the grouping rules found in Chapter 3D of the Sentencing Guidelines requires that Offense Group A, Offense Group B and Offense Group C be grouped together. The result of this grouping does not increase the offense level.

<u>**Conclusion**</u>

Based on the above and foregoing, the correct advisory guideline offense level is 27 (70-87 mos).

Dated: October 5, 2021.

Respectfully submitted,

*William H. Thomas Jr.*
WILLIAM H. THOMAS JR.
GA. BAR NO.  706610
Attorneys for Defendant

*Randy S. Chartash*
Chartash Law, LLC
Georgia Bar No. 121760
3151 Maple Dr., NE
Atlanta, GA 30305
randy@chartashlaw.com
404-333-2423

<u>*Douglas Chalmers Jr.*</u>
Douglas Chalmers, Jr.
Chalmers & Adams, LLC
 Georgia Bar No. 118742
5805 State Bridge Rd., #G77
Johns Creek, GA   30097
chalmersadams.com
770-630-5927 (office)

The W.H. Thomas Firm, LLC
511 East Paces Ferry Road NE
Atlanta, GA 30305
(404) 897-3523 (ofc)
(678) 965-1781 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL INDICTMENT |
| v. | ) | |
| | ) | 1:19-CR-184-MHC-JSA |
| | ) | |
| JIM BECK | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record.

Dated:  October 5, 2021.

*Randy S. Chartash*
Chartash Law, LLC
Georgia Bar No. 121760
3151 Maple Dr., NE
Atlanta, GA 30305
randy@chartashlaw.com
404-333-2423