IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM C. BECK | Criminal Action No.<br><br>1:19-cr-00184-MHC |

### Government's Motion for Preliminary Order of Forfeiture

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and Sekret T. Sneed, Assistant United States Attorney, for the Northern District of Georgia, respectfully moves the Court, pursuant to Federal Rule of Criminal Procedure 32.2(b), for a preliminary order of forfeiture against the defendant, Jim C. Beck ("Defendant"), following a jury verdict of guilty. A proposed preliminary order of forfeiture is filed concurrently herewith. In support, the government shows the Court the following:

### Relevant Procedural History and Factual Background

Following an eight-day trial, on July 22, 2021, a jury convicted the Defendant of wire fraud in violation of 18 U.S.C. § 1343 in Counts One through Four and Six through Eight and Eleven; mail fraud in violation of 18 U.S.C. § 1341 in Counts Thirteen through Twenty-Five; money laundering in violation of 18 U.S.C. § 1957 in Counts Twenty-Six through Thirty-Three, Thirty-Six through Thirty-Nine; and, aiding the filing of a false tax return in violation of 26 U.S.C. § 7206(2) in Counts Forty through Forty-Three of the Superseding Indictment. The Superseding Indictment contained a forfeiture provision that notified the Defendant that, upon

1

conviction of the wire fraud, mail fraud and money laundering offenses, he shall forfeit to the United States "any property, real or personal, which constitutes or is derived from proceeds traceable to such violations," pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c), and "any property, real or personal, involved in such offense, or any property traceable to such property," pursuant to 18 U.S.C. § 982(a)(1).  The Superseding Indictment, and a Bill of Particulars filed on December 30, 2019, (Doc. 52), identified the following property for forfeiture:

    i. FUNDS

       a. $80,000.00 in funds seized from United Community Bank Account ending 5675 held in the name of Jim Beck for Georgia, Inc., on May 14, 2019;

       b. $5,009.77 in funds seized from United Community Bank Account ending 9227 held in the name of Jimmy C Beck dba GA Christian Coalition, on May 14, 2019;

       c. $6,772.82 in funds seized from SunTrust Bank Account ending 3824 held in the name of Lucile R. Beck dba Creative Consultants, on May 14, 2019;

       d. $78,049.25 in funds seized from Ameriprise Financial Account ending 3133 held in the names of Lucile R. Beck and Jim C. Beck, on June 3, 2019; and,

       e. $256,901.64 in funds seized from Ameriprise Certificate Company account ending 9001 held in the names of Lucile R. Beck and Jim C. Beck Sr., on June 3, 2019.

  ii. REAL PROPERTY:

   a. The real property located at 404 Old Peachtree Road, Lawrenceville, Gwinnett County, Georgia 30043, more particularly described identified in the proposed Preliminary Order of Forfeiture.

   b. The real property located at 556 Frashier Road, Carrollton, Carroll County, Georgia 30116, more particularly described in the proposed Preliminary Order of Forfeiture.

   c. The real property located at 2653 W. Highway 166, Carrollton, Carroll County, Georgia 30177, more particularly described in the proposed Preliminary Order of Forfeiture.

   d. The real property located at 575 Kuglar Road, Bowdon, Carroll County, Georgia 30108, more particularly described in the proposed Preliminary Order of Forfeiture.

  (collectively, "Subject Real Property").

  iii. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts 1 through 39 of the Superseding Indictment.

Following trial, the Defendant waived a jury determination of the forfeiture.

## Argument and Citation of Authority

### A. Forfeiture is Mandatory After a Conviction for Mail Fraud, Wire Fraud or Money Laundering.

Rule 32.2(b) of the Federal Rules of Criminal Procedure requires a court to enter a preliminary order of forfeiture against a criminal defendant, after a verdict of

guilty, once the court determines "property is subject to forfeiture under the applicable statute":

> As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense . . ..

Fed.R.Crim.P. 32.2(b)(1)(A). *See also United States v. Monsanto*, 491 U.S. 600, 606 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied . . ."); *United States v. Brummer*, 598 F.3d 1248, 1250 (11th Cir. 2020) (rejecting the defendant's contention that district court had discretion to decline to order forfeiture); *United States v. Gilbert*, 244 F.3d 888, 909 (11th Cir. 2001) ("order of forfeiture is a required element of sentencing"); *United States v. Johnson*, 199 F.3d 1015, 1022 (9th Cir. 1999) (criminal forfeiture is mandatory and designed to ensure that a defendant does not profit from his crimes); *United States v. Hendrickson*, 22 F.3d 170, 175 (7th Cir. 1994) (criminal forfeiture for money laundering under § 982(a)(1) is mandatory); *United States v. Maxwell*, 189 F. Supp. 2d 395, 399 n.2 (E.D. Va. 2002) (because criminal forfeiture is mandatory, the primary issue before the court is not whether to issue a forfeiture order, but its size and scope); *United States v. Poulin*, 690 F.

Supp. 2d 415, 420 (E.D. Va. 2010)("The plain language of the statute provides that such forfeiture is mandatory.")(citing with approval *United States v. Patel*, No. 06-60006, 2009 WL 1579526, at *20 (W.D. La. June 3, 2009)) ("The mandatory language of this statute leaves the Court absolutely no discretion in imposing this portion of the sentence."). The government must prove forfeiture by a preponderance of the evidence. *United States v. Hasson*, 333 F.3d 1264, 1277-1278 (11th Cir. 2003). A court may base its determination on whether property identified for forfeiture is subject to forfeiture on "evidence already in the record," and "any additional record or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim P. 32.2(b)(1)(B).

Here, the applicable statutes mandate forfeiture. Specifically, the Defendant was found guilty by the jury of wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341 and money laundering in violation of 18 U.S.C. § 1957. 18 U.S.C. § 981(a)(1)(C), which governs civil forfeiture and is incorporated into criminal matters by 28 U.S.C. § 2461(c), provides that, if a defendant is convicted of a "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" such offense shall be subject to forfeiture. Wire fraud and mail fraud are specified unlawful activities. *See* 18 U.S.C. § 1956(c)(7) (incorporating the RICO predicates at 18 U.S.C. § 1961(1)). The Eleventh Circuit defines criminally forfeitable "proceeds" as property that the defendant would not have obtained "but for" the offense. *See United States v. Hoffman-Vaile*, 586 F.3d 1335, 1344 (11th Cir. 2009). Thus, the Defendant's

5

convictions for mail fraud and wire fraud authorize forfeiture of proceeds for those offenses.

Forfeiture also is available based on the Defendant's money laundering conviction. Under 18 U.S.C. § 982(a)(1), the court "in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Thus, forfeiture under a money laundering is far more broad than under a mail fraud or wire fraud offense since the government is entitled to forfeit property—not just proceeds—that was involved in the offense or is traceable to property involved in the offense. *See United States v. Hatum*, 969 F.3d 1156, 1165 (11th Cir. 2020) (noting that 18 U.S.C. § 982(a)(1) contains neither a 'proceeds' nor an 'obtained' limitation"). Thus, the Defendant's convictions for money laundering also authorize forfeiture of a broad range of property.

### B. The Property Identified for Forfeiture Represent Proceeds of the Offenses.

The government identified for forfeiture three types of property: (1) Subject Funds—funds that were seized by the government from five financial accounts held in the Defendant's name, or in his name and the name of his wife, Lucile Beck, that are proceeds of the offenses, derived from proceeds of the offenses, or are property involved in the offenses or traceable to the offenses; (2) Subject Real Property—four pieces of real property that were purchased with proceeds of the offenses, or were involved in or traceable to the offenses; and (3) a money

6

judgment in the amount of $2,064,781.85 that represents the amount of proceeds that the Defendant obtained as a result of the offenses. Since the Defendant would not have obtained the Subject Funds, the Subject Property or any other proceeds or property identified by the government for forfeiture but for the offenses, and the offenses give rise to forfeiture upon conviction, forfeiture of this property is appropriate and mandatory here.

### 1. The Subject Funds and Subject Real Property

At trial, the government established through testimony and exhibits, that the Defendant, using his position as the General Manager of Georgia Underwriting Association ("GUA"), authorized the payment of invoices from Green Technology Services ("Green Tech"), Lucca Lu, LLC, Mitigating Solutions, LLC and Paperless Solutions LLC for work that the Defendant knew had not been performed. Once GUA paid these invoices, the Defendant caused the overwhelming majority of the funds to flow from these companies to bank accounts established in the name of two entities he controlled: Lucile R. Beck dba Creative Consultants and Jimmy Beck dba GA Christian Coalition. The Defendant, who had direct access to the Green Technology Services bank account, also withdrew or caused to be withdrawn hundreds of thousands of dollars in cash. The Defendant then diverted these funds to other financial accounts he controlled to purchase several pieces of real property.

### a. The Defendant Received Over $2 Million from GUA's Payments of the Fraudulent Invoices Through Green Tech and Paperless Solutions.

Testimony from Matt Barfield, Sonya McKaig, Steve McKaig, Steve Gradick, FBI Special Agent Ashley Tucker and the Defendant, himself, and exhibits ranging from bank statements and invoices, among other things, reflected that the Matthew C. Barfield dba Green Technology Services, UCB account ending 3144 ("Green Tech Account"), received $1,010,158.98 from GUA as payment for invoices reflecting work that was never performed.[1]  (*See* Trial Ex. 424, attached hereto.)  This amount included transfers from Lucca Lu and Mitigating Solutions in the total amount of $713,400 and $325,000, respectively, to the Green Tech Account that were payments by GUA for work that was never performed.  (*See id.*)

The Green Tech Account ultimately transferred $1,206,101.74 to the Creative Consultants, Suntrust account ending 3824 ("Creative Consultants Account"), that the Defendant controlled. (*See* Trial Exs. 424 & 428-429, attached hereto.)  The Defendant also withdrew, or caused to be withdrawn, $638,504 in cash from the Green Tech Account.  (*See* Trial Ex. 424.)  In addition to the GUA funds that the Defendant obtained through the Creative Consultants Account, the Jimmy C. Beck dba GA Christian Coalition, UCB account ending 9227 ("GA Christian Coalition Account"), received $323,952.12 from Paperless Solutions.  (Trial Ex. 427, attached hereto.)  Evidence at trial showed that the funds transferred to the GA Christian

---

[1] Trial Exhibits 424 & 428-429, attached hereto, summarize the flow of funds from GUA to the Creative Consultants Account and GA Christian Coalition Account.

Coalition Account from Paperless Solutions solely consisted of payments from GUA for fraudulent invoices.

Once these funds were deposited into the Creative Consultants Account, the Defendant either withdrew the funds or transferred them to various other accounts that the Defendant controlled. Specifically, the Defendant transferred over $700,000 to the Jim and Lucy Beck, UCB account ending 9995 ("Jim and Lucy Beck Account") and transferred $5,000 to the Look into the Future Properties II, UCB account ending 9448 ("Look into the Future II Account"). (Trial Exs. 428-429.) The Jim and Lucy Beck Account transferred $550,000 to accounts at Ameriprise Financial in the name of the Defendant, $80,000 to Jim Beck for Georgia, UCB account ending 5675, and $69,000 into Look into the Future Properties I, UCB account ending 9264 ("Look into the Future I Account").

Each of the Subject Funds was seized by the government from one of the accounts discussed above. Accordingly, the Subject Funds are transfers of GUA funds that ultimately were deposited into the Creative Consultants Account and thus are proceeds of the offenses of which the Defendant was convicted or property involved in the offense or traceable to property involved in the offense, and, therefore, must be forfeited under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 or 18 U.S.C. § 982(a)(1).

### b. The Defendant Used the Proceeds from the GUA Scheme to Purchase the Subject Real Property

Once the proceeds were deposited into the Creative Consultants Account, the Defendant purchased the Subject Real Property, among other things. As relevant

here, the Defendant used $35,000 from the Creative Consultants Account to make a downpayment towards the purchase of 404 Old Peachtree Road. Bank records that were marked as exhibits by the government, and subject to the parties' stipulation regarding the admissibility of certain records, (Doc. 107), but not introduced at trial, further show that Look into the Future I Account wired funds to purchase the 404 Old Peachtree Road real property on or about May 27, 2014 and the 2653 W. Highway 166 real property on or about September 20, 2016. Bank records further show that the Look into the Future II Account wired funds to purchase the 575 Kuglar Road real property on or about March 30, 2015 and the 556 Frashier real property on or about April 22, 2016.

Accordingly, each of the Subject Real Properties was during the relevant time period and represents either proceeds of the offense or is property involved in the offense or traceable to property involved in the offense and, therefore, must be forfeited under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 or 18 U.S.C. § 982(a)(1).

### 2. The Money Judgment

It is well established that the government is entitled to a personal forfeiture money judgment, in addition to any other property that may be subject to forfeiture. *See United States v. Nagin*, 810 F.3d 348, 352-353 (5th Cir. 2016) (holding that money judgments are considered "property" subject to forfeiture) (citing *United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (". . . it is equally clear that the federal rules explicitly contemplate the entry of money judgments in criminal forfeiture cases"). "If the government seeks a personal money judgment,

the Court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim P. Rule 32.2(b)(1)(A).

Here, the government seeks a personal forfeiture money judgment against the Defendant in the amount of $2,064,781.85. As discussed above, evidence at trial showed that the Defendant obtained this amount as a result of the offense of which he was convicted as follows:

- $1,102,325.73 from the Green Tech Account, which includes transfers of GUA payments from Lucca Lu and Mitigating Solutions;
- Cash withdrawals from the Green Tech Account in the amount of $638,504.00; and,
- $323,952.12 from Paperless Solutions.

(*See* Trial Exs. 424 & 427-429.)

Because $2,064,781.85 represents the amount that the Defendant obtained as a result of the offenses that he was convicted of, and those offenses are subject to forfeiture, a personal forfeiture money judgment for this amount is mandatory.

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court enter a preliminary order of forfeiture that forfeits the Defendant's interest in each

of the Subject Funds and Subject Real Property and orders a personal forfeiture money judgment against the Defendant in the amount of $2,064,781.85.

                Respectfully submitted,

                KURT R. ERSKINE
                    *Acting United States Attorney*

                /s/SEKRET T. SNEED
                    *Assistant United States Attorney*
                Georgia Bar No. 252939
                sekret.sneed@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

October 7, 2021

                                              /s/ SEKRET T. SNEED
                                              SEKRET T. SNEED
                                              *Assistant United States Attorney*